*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| THAD SNIDER, | ) | |
| | ) | Supreme Court No. S-15613 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-07848 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MICHELE SNIDER, | ) | |
| | ) | No. 7055 – September 25, 2015 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Terry C. Aglietti, Aglietti, Offret & Woofter, Anchorage, for Appellant. Ian Wheeles, Law Office of Ian Wheeles, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

A father filed for divorce and sought sole physical custody of the couple's only child. Shortly before trial the father moved for a continuance. The court vacated the first scheduled trial day, used the second to take testimony from out-of-state witnesses, then continued taking evidence a few days later. Partway through that day's proceedings the court informed the parties it was their last opportunity to present

evidence. The father objected, and in post-trial pleadings he presented the affidavit testimony of two other witnesses he had intended to call. The superior court denied his requests to present additional evidence.

Because the lack of clarity in the proceedings led the father to reasonably believe he would have another opportunity to call witnesses, we hold that the superior court abused its discretion when it failed to give him that opportunity. We remand the case to the superior court for a limited presentation of additional testimony. We reject the father's arguments that the superior court erred by denying a motion for recusal and in its weighing of the best interest factors relevant to the award of physical custody. Finally, we outline the legal principles relevant to the treatment of one property issue on remand.

## II.    FACTS AND PROCEEDINGS

Thad and Michele Snider were married in 2008 and had a son in 2009. In 2013 Michele took the child with her to visit her family in Washington. Deciding she did not want to return to Alaska or her marriage, she informed Thad by telephone that she wanted a divorce. Nonetheless, she invited Thad to their son's upcoming birthday party in Washington and bought him a round-trip plane ticket for the occasion.

By agreement, Thad had a few days alone with their son after he arrived in Washington. But before the birthday party he took the child back to Alaska without Michele's knowledge or consent. He filed for divorce the next day. His attorney later contacted Michele, who at the time was unrepresented, and the couple signed an interim agreement that granted primary physical custody to Thad and gave Michele limited visitation.

The court held a pretrial conference in October 2013, and, although Thad's counsel mentioned a few scheduling and health-related issues, the court set a two-day divorce and custody trial for December 18 and 19 without objection.[1]

In mid-December, however, Thad moved for a continuance. His counsel claimed to be "absolutely underprepared" for trial because he had only recently received Michele's discovery; he was still affected by an injury to his leg; he had just finished a criminal trial; and — based in part on his interactions with Michele's counsel — he thought "it was kind of presumed that we were going to [be] continuing this matter." He had not yet written a trial brief or filed a witness list.

Michele's counsel agreed that the two lawyers had discussed a continuance. He explained, however, that before he could consult with Michele about it she had purchased airline tickets for herself and her mother to attend the December trial. He suggested that they use part of the two days set aside for trial to "at least tak[e] their testimony while they're in town." The court agreed: it vacated the first day of trial and set aside two hours on the second day, December 19, to hear the testimony of Michele "and grandma, if she's a witness . . . , and preserve the testimony." The court noted, "They're up here. That's the only way I'll be able to judge their credibility." The court also stated, twice, that the parties would "hold off on the property division" if that was "a real issue."

The proceedings on December 19 accordingly consisted of the testimony of Michele and her mother and focused largely on custody. Although Michele's testimony addressed a few property issues, the court reminded the parties that their time was limited and they could deal with property "at a different time," with the witnesses on the phone if necessary. But at the end of the day the court informed the parties there was time available on December 24 if they wanted to continue putting on evidence while

---

[1] Thad had different counsel in the trial court than he has on appeal.

the out-of-state witnesses were present. Although Thad's counsel had planned to close his office on Christmas Eve and spend the holiday at a lodge in the Bush, the parties agreed to continue with the testimony on the 24th.

On December 24 Michele testified primarily about the couple's property. She identified as marital property a cabin that had been deeded to her and Thad by his father Robert. During cross-examination, the court asked Thad's counsel whether he was going to call Robert as a witness; Thad's counsel replied, "Not today. We will. I suspect we're not getting it finished today." The court then stated, "I plan on finishing today." A few minutes later the court reiterated that they were in their last day of trial: "We're going to finish today. This is the only other trial day you have. . . . And this is not going to turn into a three-day trial." The court explained that the parties had originally been offered two afternoons to try the case, that it had afforded them that much time, and that it had no more trial days available until June. Thad's lawyer objected that "that's going to be unfair to Mr. Snider," but the parties nonetheless continued with their presentation of evidence (including, in addition to the testimony of Michele, testimony from Thad and from Michele's sister) and closing arguments.

Just before the court recessed, Thad's counsel asked that the judge recuse himself. The attorney offered nothing but his opinion as a basis for the motion, stating that "I do not believe you can be unbiased or objective." The court denied the motion, and Thad's counsel responded, "Okay. I'll put that motion in writing." Thad did not follow up with any written recusal motion.

In January 2014 Thad filed an affidavit from his father Robert, attesting that the deed to the cabin discussed at trial was actually a security agreement and that Robert had never intended title to pass to Thad and Michele. Michele objected, and Thad filed a response describing his perspective on the proceedings and why he was surprised that December 24 was the last trial day. According to Thad, if he had known it was his last

opportunity to put on evidence, he would have had Robert available to testify about the cabin, and he would have had his brother, Jeremiah deSilva, available to testify that Michele's mother had once contacted him for the illicit purchase or sale of prescription narcotics.[2] Thad attached deSilva's affidavit outlining this testimony. He asked that the court "schedule additional time so that a more complete and adequate picture of this case may be presented before this court issues [its] final decision."

Michele moved to strike the affidavits, and Thad filed a response which again explained why he thought he had been unfairly surprised by the course of proceedings. The superior court granted Michele's motion to strike, also stating that while Thad had not filed a formal motion for more trial time, his "constructive request for additional time is denied."[3]

The superior court put an oral decision on the record in May 2014, awarding the parties joint legal custody of their son. For physical custody, the court evaluated the child's best interests in light of the relevant statutory factors[4] and found them all equal between the parties except "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[5] The court found this factor to favor Michele, and it therefore awarded her primary physical custody. In its division of property, the court found the cabin to be

---

[2]     Michele had testified that she and the child would live at her mother's house in Washington.

[3]     Though not by separate motion, Thad did explicitly ask for more trial time in both his response to Michele's objection to the Robert Snider affidavit and his response to Michele's motion to strike the two affidavits.

[4]     *See* AS 25.24.150(c).

[5]     AS 25.24.150(c)(6).

marital because it was titled in the parties' names and because "Mr. Snider failed to meet his burden to show that it was something else."

Thad moved for reconsideration. He argued once more that the superior court had led him to believe he would have the opportunity to present more evidence after December 24. The superior court denied the motion and entered written findings of fact and conclusions of law reflecting its oral decision.

Thad appeals.

## III. STANDARDS OF REVIEW

We review a superior court's ruling on a party's request to reopen evidence for abuse of discretion.[6] Also, "[a] judge's decision that he is actually capable of conducting a fair trial is reviewed for abuse of discretion. The separate question whether a judge's participation in a case would lead reasonable people to question his ability to be fair is a question of law reviewed de novo."[7]

"Trial courts have broad discretion in determining child custody," and "[w]e will set aside the superior court's custody determination only if the court abused its discretion or if its findings of fact are clearly erroneous."[8]

---

[6]     *Sanguinetti v. Sanguinetti*, 628 P.2d 913, 916 n.3 (Alaska 1981) ("[R]ulings of the trial court on . . . re-opening of a case will be disturbed on appeal only where there has been an abuse of discretion."); *Yang v. Yoo*, 812 P.2d 210, 217 (Alaska 1991) (stating that "[t]he standard of review of the trial court's admission or exclusion of evidence is abuse of discretion" while analyzing request to admit affidavit after close of evidence)*; see also Miller v. State*, 462 P.2d 421, 428 (Alaska 1969) ("The trial court has a large discretion with respect to order of proof in permitting a party to reopen after it has rested." (quoting *Massey v. United States*, 358 F.2d 782, 786 (10th Cir. 1966))).

[7]     *Heber v. Heber*, 330 P.3d 926, 934 (Alaska 2014) (footnote omitted).

[8]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

## IV. DISCUSSION

### A. It Was An Abuse Of Discretion To Refuse Thad's Request To Reopen The Evidence.

Thad argues that the superior court led him to believe he would be allowed to present additional evidence after December 24 and that it should have scheduled time for the testimony of his father and brother. We agree and hold that it was an abuse of discretion to refuse to reopen the evidence on Thad's request.

At the outset we emphasize that if the superior court had simply denied Thad's motion for a continuance outright at the December 16 hearing, it is very unlikely we would have found an abuse of discretion.[9] "A party who seeks to continue a case set for trial must show that he acted with due diligence upon the grounds for which the continuance is sought,"[10] and the record in this case reveals no such showing.[11]

But the court did not deny the motion to continue trial; instead it scheduled one day of proceedings to take the testimony of the two out-of-state witnesses,

---

[9] As with a request to reopen evidence, "we review for abuse of discretion a refusal to grant a continuance." *Shooshanian v. Dire*, 237 P.3d 618, 622 (Alaska 2010).

[10] *Sparks v. Gustafson*, 750 P.2d 338, 341 (Alaska 1988); *see also Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1019 (Alaska 2009) (finding no abuse of discretion in denial of continuance when party made "no claim that representation was inadequate or ineffective, instead arguing only that he feels that his attorney possibly could have been better prepared"); *Mack v. Mack*, 816 P.2d 197, 198 (Alaska 1991) ("[W]e believe that the trial court here had reason to discount the hardship that [the wife] might suffer if denied a second continuance, because her, or her original attorney's, lack of due diligence actually caused that hardship."

[11] Thad's argument for a continuance was based largely on his counsel's health issue and trial schedule, both of which he had noted when he agreed to the December 18-19 trial. And although the parties agreed that there had been some miscommunication about whether to continue trial, the superior court correctly observed that — two days before trial — there was no agreement to continue.

explaining, "I'm going to allow [Michele's counsel] to put on his testimony, for his client and [whatever other] witness that he has up here. They're up here. That's the only way I'll be able to judge their credibility. We'll hold off on the property, if that's a real issue." Michele's counsel confirmed that the proceeding would be for "just my two witnesses" and offered to schedule it for the later of the two available days, December 19, to give Thad's counsel more time to prepare.

On December 19, as contemplated, Michele and her mother testified largely about custody. When questioning by Thad's counsel strayed into property issues, the superior court noted that "these are some items we can deal with at a different time"; the court repeated that "the purpose of this" was that "[w]e have these witnesses up in person," and "I'd like to see them today. . . . I'd like to wrap it up pretty quick and get to redirect. And get the grandmother in here to testify, so I can judge her credibility." And when Michele completed her testimony, the court advised her, "We'll hear from you again, when you're on the phone sometime, on the other issues."

It was at the end of the day that the superior court suggested taking more evidence on December 24. Again, the court was focused on the availability of the out-of-state witnesses: "[I]f you wish to have a hearing[] while your client is here . . . I can do it the afternoon on the 24th. . . . It's Christmas Eve, but if you want to have your clients here and the parties are available, we'll take Christmas Eve afternoon to accommodate the out-of-state witnesses."[12] Although Thad's counsel was taken by surprise by the court's suggestion — he explained he had planned to release his staff on Christmas Eve,

---

[12] The superior court referred to the out-of-state witnesses repeatedly in explaining why it hoped to continue taking evidence on December 24: "[Starting early in the afternoon will] give you as much time as possible, while the parties are here from out-of-state to take testimony and put whatever evidence you wanted on. . . . It's helpful to the court because . . . it's significant to have the parties present to testify if at all possible. And they're here and they only are here for such a short period of time."

close his office, and spend the holidays at a lodge — he did consent to it, and the court thanked him "for [his] accommodation while they're here." It could be inferred from bits of conversation that the participants had different views of what was planned for December 24.[13] But the superior court did not say that it would be Thad's last opportunity to present evidence. In light of the narrow focus of the proceedings on the 19th, and the lack of clarity as to the court's intentions for the 24th, we cannot say it was unreasonable for Thad's counsel to assume that the general plan was unchanged: that is, the parties would take as much testimony as they could while the out-of-state witnesses were in town but would have time for other witnesses later.

It was only partway into Michele's testimony on December 24 that the superior court clarified it was the last day of trial. Thad's lawyer said he had expected to call other witnesses later, and he protested that closing the evidence would be unfair to his client. He laid out his objection with more detail in three post-trial memoranda: his response to Michele's objections to the post-trial filing of Robert Snider's affidavit (in which he asked for more trial time), his response to Michele's motion to strike the deSilva affidavit (again asking for more trial time), and his motion for reconsideration of the court's oral decision (in which he asserted that the proceedings had denied him due process). He outlined the procedural basis for his belief that December 24 was not going to be his last opportunity to present evidence, and he described the testimony from Robert Snider and Jeremiah deSilva that he had been prevented from introducing.

---

[13] At one point Thad's counsel remarked that "we can try and get some more of something on anyway"; the court responded that "[i]f you move quickly through the essential things, you may be able to take the whole process in the morning and then you're good to go the rest of your day"; and Michele's counsel said, "I don't have any reason to think we couldn't finish." But it is not clear whether by "the whole process" the court meant the entire case, the custody issue, or the testimony of the out-of-state witnesses; and it is not clear what Michele's counsel was suggesting could be "finish[ed]" that day.

In deciding whether to hold the record open for additional evidence, a court should consider the importance of the evidence, the diligence of the proponent of the evidence, and the possible prejudice to the other party.[14] The additional evidence that Thad offered could make a difference to the superior court's decision. Thad explained in his post-trial filings that Robert Snider — grantor of the deed to the disputed cabin — would testify that the deed reflected a security interest rather than a transfer of title to the marital estate; this was an issue to which the parties devoted significant trial time but which was decided against Thad specifically because he failed to produce sufficient evidence of the parties' intent. DeSilva was to testify about alleged substance abuse by a member of Michele's household who would have some responsibility for the child's care. The superior court found the relevant best interests factor[15] equal between the parties, finding no "evidence of substance abuse [that would] . . . affect the emotional, physical well[-]being of the child. So this is neutral." Because all factors but one were

---

[14] *See Aransas Project v. Shaw*, 775 F.3d 641, 655 (5th Cir. 2014) ("In deciding whether to reopen evidence, a court should weigh 'the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party.'" (*quoting Chieftain Int'l (U.S.), Inc. v. Southeast Offshore, Inc.*, 553 F.3d 817, 820 (5th Cir. 2008))); *S.E.C. v. Rogers*, 790 F.2d 1450, 1460 (9th Cir. 1986) ("A district court should take into account, in considering a motion to hold open the trial record, the character of the additional testimony and the effect of granting the motion. The court should also consider the diligence of the moving party, and any possible prejudice to the other party." (citing 6A J. Moore, MOORE'S FEDERAL PRACTICE, ¶ 59.04 [13] at 59-31 to 32 (2d ed. 1985) and *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331-32 (1971))).

[15] *See* AS 25.24.150(c)(8) ("In determining the best interests of the child the court shall consider . . . evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child.").

equal in the superior court's analysis, according different weight to any one of them may have affected the court's decision to grant primary physical custody to Michele.[16]

Furthermore, our review of the hearing transcripts convinces us that Thad's belief that he would have more time to present evidence was reasonable. The superior court's instructions to the parties were unclear as to the purpose and scope of the proceedings, and the court did not clarify that the evidence was to close on December 24 until that day's proceedings were already underway. And we can perceive no unfair prejudice to the opposing party if Thad were allowed to present the testimony of these two witnesses, subject to cross-examination.

Under these circumstances, once Thad had submitted the post-trial affidavits of the witnesses he would have presented given the chance, it was an abuse of discretion to deny his request to reopen the evidence.[17] Given the potential importance of the evidence we cannot say that the error was harmless.[18] We therefore vacate the superior court's decisions on child custody and marital property and remand for further

---

[16]     *See Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 353 (Alaska 2012) ("The test for determining whether an error [in excluding evidence] was harmless is whether on the whole record the error would have had a substantial influence on the verdict . . . . Some factors relevant to this inquiry are the relative amount of time at trial devoted to the evidence and whether the . . . evidence was cumulative and largely replicated other . . . evidence." (quoting *Noffke v. Perez*, 178 P.3d 1141, 1147 (Alaska 2008)) (second and third alterations in original) (internal quotation marks omitted) (footnote omitted)).

[17]     Thad also argues that the superior court's refusal to allow him to present additional testimony deprived him of due process. Because we conclude that the superior court abused its discretion, we need not reach the constitutional issue.

[18]     *Cf. Noffke*, 178 P.3d at 1147 ("Even though it was error to exclude the exhibits, [the party alleging error] must still show that the error was harmful or prejudicial.").

proceedings, limited to the testimony of Robert Snider and deSilva and any necessary rebuttal. Such proceedings shall be completed within 90 days of the date of this opinion.

## B. The Denial Of Thad's Motion For Recusal Was Not Error.

Thad also argues that the superior court erred when it denied his motion for recusal for bias. "To prove a claim of judicial bias, the claimant must show that the judge formed an opinion of [him] from extrajudicial sources, resulting in an opinion other than on the merits."[19] And although a judge must "consider the appearance of partiality in addition to actual bias, we have also explained that when a party seeks a judge's recusal solely due to the appearance of partiality, 'a greater showing is required.' "[20] Thad fails to make that showing here.

Thad first finds bias in the judge's failure to provide the additional time Thad expected for the presentation of evidence. But while we agree that this was an abuse of discretion, "a ruling against a party, even an incorrect ruling, is not evidence of judicial bias."[21]

Thad also finds bias in certain of the court's factual findings, largely about custody, which he contends were unsupported by the record. While one of the superior court's findings — that Thad "worked long hours, oftentimes seven days a week" —

---

[19] *Ronny M. v. Nanette H.*, 303 P.3d 392, 409 (Alaska 2013) (alteration in original) (quoting *Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011)); *see also* AS 22.20.020(a) (describing matters in which a "judicial officer may not act"); Alaska Code of Jud. Conduct, Canon 3 ("[A] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned.").

[20] *Peterson v. Swarthout*, 214 P.3d 332, 339 (Alaska 2009) (quoting *Wasserman v. Bartholomew*, 38 P.3d 1162, 1170 (Alaska 2002)).

[21] *Id.*; *see also Wasserman*, 38 P.3d at 1171 ("Although we twice reversed the trial court for excluding the testimony of three witnesses, we affirmed the trial court's rulings on all other appealed issues. . . . We hold that denying the motion for disqualification was not an abuse of the trial court's discretion.").

appears to be erroneous,[22] the "controlling findings of fact" are not.[23] As a whole, "[t]he factual findings therefore do not reflect an abuse of discretion, much less any bias."[24] Because the record does not support a contention that the trial judge could not be fair, we hold that he did not abuse his discretion when denying Thad's motion for recusal.[25]

**C.  Although The Superior Court Must Reconsider Its Custody Decision On Remand, There Was No Abuse Of Discretion In Its Weighing Of The Best Interest Factors Thad Addresses On Appeal.**

Thad also argues that the superior court erred in awarding primary physical custody to Michele. Although we are vacating the custody decision for further consideration in light of the additional evidence to be heard on remand, Thad's arguments are independent of the reasons for remand, and we address them so that he need not raise them again.[26] We find no error in the superior court's weighing of the best interest factors that Thad addresses in his appeal.

---

[22]  Thad testified, apparently without contradiction, that his work schedule was four 10-hour days a week.

[23]  *See Red Elk v. McBride*, 344 P.3d 818, 822 (Alaska 2015) ("We will overturn the superior court's conclusion on a custody issue 'only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion.' " (quoting *Chesser-Witmer v. Chesser*, 117 P.3d 711, 715 (Alaska 2005))).

[24]  *Barlow v. Thompson*, 221 P.3d 998, 1005 (Alaska 2009).

[25]  Thad makes no argument on appeal that the superior court erred by failing to refer the recusal order to the presiding judge for further review. *See* AS 22.20.020(c).

[26]  *See Robinson v. Robinson*, 961 P.2d 1000, 1003 (Alaska 1998) (remanding for further findings on a motion to modify custody but "briefly address[ing] the merits of [the mother's] arguments opposing the modification motion in order to provide guidance to the superior court").

In a divorce proceeding, the superior court "shall determine custody in accordance with the best interests of the child."[27] "We will set aside the superior court's custody determination only if the court abused its discretion or if its findings of fact are clearly erroneous."[28] "The superior court abuses its discretion if it 'consider[s] improper factors in making its custody determination, fails to consider statutorily mandated factors, or assign[s] disproportionate weight to particular factors while ignoring others.' "[29]

Thad first argues that the superior court erred by finding "the love and affection existing between the child and each parent"[30] to favor Michele. Thad's premise is simply mistaken; the superior court found this factor equal between the parties.

Second, Thad challenges the superior court's finding that "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity"[31] was equal between the parties. Thad argues that because the child had not lived with Michele in Washington for more than a few days, "the judge assumed, *without evidence*, that the [child's] life would have been stable had he remained there because Thad submitted no evidence to the contrary." But the superior court considered two components of the stability factor, "maintaining geographic continuity and maximizing relational stability," and applied the principle that "courts may properly award primary custody to the relocating parent when that parent offers superior

---

[27]     *See* AS 25.24.150(c).

[28]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

[29]     *Id.* (alterations in original) (quoting *Barrett v. Alguire*, 35 P.3d 1, 5 n.5 (Alaska 2001)).

[30]     AS 25.24.150(c)(4).

[31]     AS 25.24.150(c)(5).

emotional stability."[32]  The superior court explicitly noted that "[s]tability, oftentimes, is not a particular location and instead . . . can be based upon the relationship with the parties."  And the superior court's conclusion regarding Michele's emotional connection to the child is supported by its factual findings, which in turn are supported by the evidence.

Furthermore, since the parties had signed an interim custody agreement granting Thad physical custody — at Thad's insistence and before Michele had retained counsel — Michele could not make the kind of showing of long-term stability that Thad argues was required.  Thad's argument amounts to a "continuity test centered entirely on the child's geographical stability," which we have specifically disclaimed.[33]  And to the extent Thad implicitly argues that Michele bore a burden to introduce evidence on this point, he is mistaken.  There is no presumption against custody in this case, and neither parent has a greater burden than the other.[34]

---

[32]    *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001)  (quoting *Blanton v. Yourkowski*, 180 P.3d 948, 953-54 (Alaska 2008)).

[33]    *Id.* at 954 ("A continuity test centered entirely on the child's geographical stability would always favor placing the child with the non-moving parent.  Yet our decisions recognize that courts may properly award primary custody to the relocating parent when that parent offers superior emotional stability." (quoting *Meier*, 34 P.3d at 1279)).

[34]    *See Johnson v. Johnson*, 564 P.2d 71, 75 (Alaska 1977) (stating that neither parent has "a greater burden than the other in attempting to obtain custody in a dissolution proceeding"); 1 JEFF ATKINSON, MODERN CHILD CUSTODY PRACTICE § 4-2 (2d ed. 2014) ("In the majority of states that by appellate court decision or statute do not give preference to mothers, the burden of proof is placed equally on both parents. Whichever parent can show by a preponderance of the evidence that it would be in the child's best interest to be in his or her custody will obtain custody, even if the difference in proof is very slight.") (footnote omitted); *see also Harris v. Harris*, 240 S.E.2d 30, 31 (Ga. 1977) ("The ordinary burden of proof of the plaintiff in a legal action does not apply

(continued...)

Thad also argues that the superior court abused its discretion by failing to provide "symmetric consideration" of the effects on the child of separation from Thad and separation from Michele as required by *Moeller-Prokosch v. Prokosch*.[35] The mother in that custody case was considering a move to Florida, and, after several remands from this court,[36] the superior court awarded her primary physical custody only if she remained in Alaska.[37] The superior court based its decision in part on its finding that the child "would be devastated if he had to move to Florida away from his father."[38]

At trial, however, it had been "undisputed that [the child] would be devastated by either custody choice: living in Alaska without his mother or living in Florida without his father," and we concluded that the superior court had improperly

---

[34](...continued)
to the plaintiff in a divorce action seeking the custody of a minor child. The true objective is the best interest of the child. . . . Where the trial judge exercises a sound legal discretion looking to the best interests of the child, this court will not interfere with his judgment unless it is shown that his discretion was abused.").

[35]    99 P.3d 531 (Alaska 2004).

[36]    *See Moeller-Prokosch v. Prokosch*, 27 P.3d 314, 316-17 (Alaska 2001); *Moeller-Prokosch v. Prokosch*, 53 P.3d 152, 155-57 (Alaska 2002).

We have previously held that, in making a custody determination when a parent chooses to relocate outside of Alaska, "a court must consider the best interests of the children by applying the criteria in AS 25.24.150(c), and in doing so should consider whether there is a legitimate reason for the move," and that "[a] proposed move is legitimate if it 'was not primarily motivated by a desire to make visitation . . . more difficult.' " *Ronny M. v. Nanette H.*, 303 P.3d 392, 402-03 (Alaska 2013) (quoting *Vachon v. Pugliese*, 931 P.2d 371, 379 (Alaska 1996) and *Moeller-Prokosch*, 27 P.3d at 316 (alterations in original)). Thad has not alleged — either at trial or on appeal — that Michele's move was not for a legitimate reason.

[37]    *Moeller-Prokosch*, 99 P.3d at 533.

[38]    *Id.*

failed to address the impact on the child if he stayed in Alaska without his mother.[39] We held that "[p]erforming the best interests analysis based on [a parent's] assumed move requires symmetric consideration of the consequences to [the child] both if she leaves with him and if she leaves without him"; we therefore reversed the superior court's decision.[40]

In this case, although the superior court acknowledged the child's "stable environment" in Alaska where he had been living with Thad since shortly after the separation, it is true that the court discussed more specifically the child's close emotional ties to his mother and his maternal grandmother in Washington. But the court ultimately concluded that the stability factor favored neither parent. Again, the court's findings are well supported by the record. And unlike *Moeller-Prokosch*, we can see from the superior court's discussion of the stability factor that it did consider both parents' situations individually; there was therefore no abuse of discretion.[41]

Finally, Thad argues that the superior court erred in finding that "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child"[42] — the determinative factor — favored Michele, because its factual findings are not supported by the record. We disagree. Michelle testified about Thad's efforts to restrict or condition her visitation, and Thad himself testified about his many reservations regarding Michele's living situation and general stability, concerns the superior court could reasonably have

---

[39]     *Id.* at 535.

[40]     *Id.* at 535-36.

[41]     *See Silvan v. Alcina*, 105 P.3d 117, 121-22 (Alaska 2005) ("Unlike *Moeller-Prokosch* . . . there is no evidence to indicate that the superior court did not individually address and consider both parents' situations.").

[42]     AS 25.24.150(c)(6).

-17-                                                                        7055

concluded were overstated. Furthermore, the superior court was clear that its conclusions on this factor especially were based on credibility, and "[w]e give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[43]

Without considering the additional evidence that on remand may affect the superior court's award of custody, we see no abuse of discretion in the superior court's weighing of the best interest factors that Thad addresses on appeal.

**D.    Whether The Cabin Is Marital Property Must Be Determined By Reference To Circumstances Relevant To The Parties' Intent.**

Finally, because the character of the cabin formerly titled in the name of Thad's father will be a focus of the proceedings on remand, we take this opportunity to describe the parameters of that decision. The evidence already adduced shows that Robert signed a quitclaim deed to the property in the names of Thad and Michele. Thad testified that he and Michele helped Robert pay his past-due taxes, and to secure Robert's repayment of this debt (at Michele's insistence) Robert put the cabin in Thad and Michele's names. Thad testified that Robert still considered the cabin his residence.

As the superior court recognized in its decision, "[d]eeds absolute on their face can be reformed into security agreements based on clear and convincing evidence that a security was intended."[44] Here, however, the superior court found that Thad had failed to carry his burden to prove the existence of a security agreement, and the cabin was marital property.

---

[43]    *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013) (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)); *see also James R. v. Kylie R.*, 320 P.3d 273, 281-82 (Alaska 2014).

[44]    *Griffin v. Weber*, 299 P.3d 701, 704 (Alaska 2013) (citing *Rizo v. MacBeth*, 398 P.2d 209, 211 (Alaska 1965)).

In deciding whether a security interest was intended, Alaska courts "look to the intention of the parties at the time of execution," and "[i]n the absence of any writing the intention is to be determined from all of the facts and circumstances of the transaction in which the deed was executed, in connection with the conduct of the parties after its execution."[45]  In making that determination,

> [s]ome of the various circumstances that may be considered are:  The adequacy or inadequacy of consideration as compared to the value of the property, which is often stated to be the single most important factor.  Retention or nonretention of possession.  The conduct of the parties before and after the execution of the instrument.  The financial condition of grantor at the time of execution of the instrument.  The overall relationship of the parties — financial, business, debtor-creditor, etc.  Whether the grantor or grantee paid the taxes.  The construction of improvements after the execution of the deed.  Whether or not revenue stamps were affixed to the instrument.[46]

And "[t]here are others.  Generally it can be said that no one of the circumstances is necessarily controlling, but that all present are to be considered."[47]

On remand, and with the addition of Robert's testimony, the superior court will need to consider the cabin's status as marital property in light of all relevant evidence of the parties' intent.

---

[45]  *Rizo*, 398 P.2d at 211-12.

[46]  *Id.* at 212 (footnotes omitted); *see also Griffin*, 299 P.3d at 704 n.4.

[47]  *Rizo*, 398 P.2d at 212 (footnotes omitted).

## V.    CONCLUSION

We VACATE the superior court's decisions on child custody and the division of marital property and REMAND for further proceedings consistent with this opinion, to be completed within 90 days.  We retain jurisdiction.[48]

---

[48]    Alaska Rules of Appellate Procedure 507(b) and 512(a) aside, this decision takes effect immediately and the clerk of the appellate courts shall return the record to the superior court without waiting for expiration of the time for filing a petition for rehearing.