NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RYAN A. JOHNSTON, ) | |
| ) | Supreme Court Nos. S-18975/18985 |
| Appellant and ) | |
| Cross-Appellee, ) | Superior Court No. 3AN-20-09125 CI |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND JUDGMENT* |
| TIFFANY G. ADKINS, f/k/a Tiffany ) | |
| G. Johnston, ) | No. 2113 – October 8, 2025 |
| ) | |
| Appellee and ) | |
| Cross-Appellant. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: Nathan T. Henshaw and Michael Gavrilis, Henshaw Law, Anchorage, for Appellant and Cross-Appellee. Kara A. Nyquist, Nyquist Law Group, Anchorage, for Appellee and Cross-Appellant.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

## I. INTRODUCTION

A married couple co-owned a business that they managed together. After over 16 years of marriage and 8 years operating the company together, the couple

---

\*      Entered under Alaska Appellate Rule 214.

separated. During the divorce proceeding, the court awarded the wife sole interim oversight of the company, though the husband continued to receive a salary. After an eight-day trial, the court awarded the wife sole ownership of the business retroactively to the date of separation. Both parties appeal various aspects of the court's division of the marital business, including the court's characterization and valuation of the business's goodwill, its establishment of the date of valuation and ownership transfer, its overall division of the marital estate, and its determination of pre- and post-judgment interest. The ex-wife also appeals a procedural decision by the superior court to not reopen the evidence after the conclusion of the trial. We affirm each of the court's decisions, except for its calculation of prejudgment interest, which we vacate and remand for recalculation consistent with this decision.

## II.    FACTS AND PROCEEDINGS

### A.    Family History And Development Of Business

Tiffany Adkins and Ryan Johnston married in 2004. In early 2012, Adkins and Johnston formed the Playful Learning Pediatric Therapy Limited Liability Company (PLPT) in Eagle River. PLPT provides pediatric occupational therapy, physical therapy, and speech therapy. Adkins is licensed to practice occupational therapy in Alaska and worked in a pediatric therapy office for about three years before opening the business. Prior to the development of PLPT, Johnston primarily worked as an electrician and in physical labor. Following a workplace injury and surgery, however, he received a workers' compensation settlement. Some of the start-up costs for PLPT were funded by the $60,000 workers' compensation settlement Johnston had obtained.

When Adkins and Johnston first formed PLPT, Adkins was the sole full-time therapy service provider, and she had no administrative support staff. Then about a year into the business, Johnston took over the handling of PLPT's finances. Since 2012, PLPT has expanded to include clinic locations in Eagle River, Palmer, and Wasilla, and the business now employs nearly 30 people. Adkins was later described

by a business valuation expert as "the driving force behind PLPT," as she directed business operations and facilitated business growth, while also overseeing other therapists and billing of insurance.

In October 2019, Adkins and Johnston signed an operating agreement for PLPT that established its rules and procedures as a limited liability company. The operating agreement also established Adkins and Johnston as joint members of PLPT, each with a 50 percent share in the business.

## B. Divorce Proceedings And Valuation Of PLPT

Adkins and Johnston separated on November 15, 2020, and Adkins filed for divorce two days later. In March 2021, the court ordered that Adkins would have interim sole oversight of PLPT, with complete authority to make decisions regarding business operations and staffing. The court ordered Johnston to return his work equipment and refrain from entering PLPT premises without permission from the court or Adkins. Although Johnston no longer worked at PLPT, the court ordered that he would continue to receive a monthly salary of $12,000.

The court held a property division trial that spanned eight days between the end of November 2022 and the middle of January 2023. Adkins and Johnston each hired experts to conduct valuations of PLPT to assist in the court's division of marital assets.

Adkins retained Jacquelyn Briskey to conduct her valuation. Briskey determined the fair market value of PLPT to be $4,051,000, of which she opined $2,671,000 was marketable property. Included in Briskey's analysis was her consideration of the goodwill associated with PLPT. She explained that a goodwill analysis examines the intangible assets "arising as a result of name, reputation, customer loyalty, location, products, and similar factors not separately identified." Briskey explained that goodwill is marketable "if there is a perception that the earnings it generates will continue in the future independent of the time and effort involved." Goodwill can be broken into either practice/enterprise goodwill, which "is associated

with the business as a whole," or personal/professional goodwill, which is associated with the "personal efforts of [an] individual." Briskey determined that 40% of PLPT's goodwill was personal, associated with Adkins, and that 60% of its goodwill was enterprise goodwill, which was marketable. Briskey valued the company as of December 31, 2020, using the capitalization of excess earnings method.[1]

Johnston retained Susan Spyker to conduct his valuation. Spyker came to conclusions that were different from Briskey's. She estimated PLPT's fair market value at $5,180,000, of which she opined $4,140,000 was marketable. Spyker considered PLPT's goodwill to be more enterprise-related than personal, so estimated 80% of its goodwill to be marketable. Spyker valued the company as of the date of separation, using the capitalization of net cash flows method. Spyker explained that this method "uses the actual cash flows of the business to value it." Until trial Johnston took the position that he wanted to keep PLPT, but he ultimately asked the court to award the company to Adkins as of the trial date.

## C. Superior Court's Property Division Decision

The court made a decision on record tentatively dividing the parties' marital property. It provided the parties with a draft property spreadsheet illustrating its decision and invited the parties to file motions for reconsideration to address any perceived errors in its analysis.

---

[1] Michael W. Kalcheim, *Expert Testimony and Valuing Goodwill at Divorce*, 88 ILL. B.J. 652, 657 (2000) ("[T]he capitalization-of-excess-earnings approach is the most common method for valuing goodwill in marital property divisions in other states. Under this method, the difference between the actual earnings of the business and the earnings of the 'average' or reasonable business is determined. This difference is then 'capitalized' or multiplied by some number, usually between one and five. The goodwill value is then added to the value of the sum total of the tangible assets to reach the total value of the business." (footnotes omitted)).

When considering the value of PLPT, the court adopted the valuation of Spyker, Johnston's expert, due in large part to the weight Spyker gave to PLPT's tax returns from 2019, when all three business locations for PLPT were operational. However, the court adopted Briskey's opinion that 40% of the goodwill associated with PLPT was personal and therefore not marketable. The court reasoned that Briskey better understood Adkins's role in PLPT. The court awarded Adkins the company as of the date of separation, using Spyker's valuation adjusted according to Briskey's goodwill evaluation. To address the potential inequity associated with Adkins being considered the owner of PLPT as of November 2020, the court awarded Johnston half of the estimated marital profits that had been generated by PLPT in 2021 and 2022.

Overall, the court also awarded Johnston nearly 53% of the marital estate, largely because Adkins was receiving the major income-generating asset. The court found that Johnston's physical limitations did not — as he claimed — render him unable to work. Rather, it found him to be skilled with finances. The court's overall property division resulted in an equalization payment of $812,175 to Johnston to be distributed through quarterly payments.

Johnston filed a motion for reconsideration. He argued that the court should not have ignored PLPT's operating agreement, which designated him as an owner. He further contended that PLPT's earnings after separation but before divorce should be considered marital and should therefore become part of the marital property to be divided. Finally, Johnston argued that the court should have adopted his expert's personal goodwill determination of PLPT at 20%, and that he should have been awarded at least 60% of the marital estate.

The court denied Johnston's motion for reconsideration in part, declining to adopt a new goodwill determination, to award Johnston distributions from PLPT during the time between separation and divorce, or to change its overall division of the marital estate. The court explained that it "did not arbitrarily select 40% as personal goodwill — it considered the testimony of Ms. Adkins, Ms. Briskey, and Ms. Spyker,"

and it found Briskey's testimony to be the most credible and persuasive. In response to Johnston's concerns with the date of valuation and award of PLPT to Adkins, the court first explained that "a trial court has considerable discretion with respect to valuing and allocating marital property." It also explained that its valuation of PLPT as of the date of separation (the valuation date Johnston's expert suggested) meant that Adkins had essentially purchased the business, both its profits and losses, as of that date. The court reasoned that "it would be unfair" to use this date for valuation but keep Johnston on as a LLC member who received distributions until the divorce, thereby undermining the value of the business. The court further declined to modify its 53/47 split because the "allocation recognize[d] that Ms. Adkins ha[d] a superior earning capacity" while stopping short of Johnston's position that he "ha[d] no job skills at all."

The court's order denying Johnston's motion for reconsideration served as the court's final order regarding property valuation and allocation. The court concluded its order by explaining that given its award of the business to Adkins as of the time of separation, Johnston should receive prejudgment interest for his share of the business from the time of separation. The court did so in lieu of awarding Johnston the estimated 50% of marital profits in 2021 and 2022 as the court had initially planned to do in its decision on record. The court ultimately valued PLPT at $3,109,800 as of November 2020, making Johnston's marital interest $1,554,900 as of that time. Using the prejudgment interest rate of 5.25% for 2020, the court calculated that "Mr. Johnston should receive $165,948 in prejudgment interest to compensate him for loss of the use of his money." The court also ordered Adkins to make the equalization payment of $812,175 to Johnston through ten quarterly payments over two and a half years, with post-judgment interest accruing at 7.5%.

Adkins then filed a motion for reconsideration. She primarily argued that the court miscalculated the amount of prejudgment interest, contending that the prejudgment interest calculated by the court failed to account for the $697,231 that Johnston received in unearned salary and withdrawal from PLPT's account during the

period from separation to trial. Adkins asserted that "[i]t would be prejudicial . . . to require her to pay prejudgment interest on Mr. Johnston's marital share of PLPT for the time between separation and trial, without also accounting for the fact Mr. Johnston received some of the funds during that time period."

The court denied her motion, explaining that the existing award reflected "that Mr. Johnston lost the opportunity to invest or utilize the full value of his share of PLPT as he saw fit." The court recognized that Johnston received portions of his share of the value of PLPT over time, but that it was in a piecemeal fashion. The court contrasted this with Adkins receiving her share of PLPT, "in the form of control over the marital business," all at once.

### D. Adkins's Motion To Reopen Evidence

After trial concluded, Blue Cross Blue Shield (BCBS) audited claims paid to PLPT. PLPT received over 1,500 recoupment letters from BCBS from late January 2023 to mid-March 2023. The total amount requested for recoupment as a result of this BCBS audit was $392,980.62.

Adkins moved for the court to reopen the evidence as some of the debts were associated with claims paid during the marriage. Adkins argued that, as a result, the court's valuation of the marital debt should increase by $320,155.41, the total associated with services provided before the couple's separation, when Johnston was still an equal partner in PLPT.

Johnston opposed Adkins's motion. He argued that when she sought award of the whole business, Adkins assumed the risk that debts may arise after the fact. Johnston also argued that reopening the evidence would further delay the equalization payment he was owed, thereby prejudicing him.

The court denied Adkins's motion to reopen the evidence and supplement the record. The court explained that it denied the motion because as of the date of separation, PLPT belonged to Adkins. The court reasoned that its analysis of PLPT would go on indefinitely if it kept "making adjustments for the value as . . . things pop

up, which they seem to do occasionally in this business." The court highlighted that "finality [was] very important" in divorce cases and that, for that reason, it would not reopen the evidence.

Both parties now appeal.

## III. STANDARD OF REVIEW

"Equitable division of marital assets is a three-step process: determining what property is available for distribution, assessing the property's value, and allocating the property equitably."[2] "[T]he characterization of property as separate or marital may involve both legal and factual questions."[3] We apply de novo review to legal questions and review factual findings for clear error.[4] "The valuation of property is a question of fact . . . ."[5] A finding of fact is clearly erroneous "if a review of the entire record firmly convinces us that a mistake has been made."[6] The court's distribution of assets is reviewed for abuse of discretion, and we "will only reverse if the distribution is clearly unjust."[7]

---

[2] *Martin v. Martin*, 52 P.3d 724, 726 (Alaska 2002) (citing *Lundquist v. Lundquist*, 923 P.2d 42, 46-47 (Alaska 1996)).

[3] *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013) (quoting *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006)).

[4] *Id*.

[5] *Fortson v. Fortson*, 131 P.3d 451, 456 (Alaska 2006) (citing *Martin*, 52 P.3d at 726).

[6] *Schmitz v. Schmitz*, 88 P.3d 1116, 1121 (Alaska 2004) (citing *West v. West*, 21 P.3d 838, 841 (Alaska 2001)).

[7] *Martin*, 52 P.3d at 726 (citing *Brotherton v. Brotherton*, 941 P.2d 1241, 1244 (Alaska 1997)).

Superior courts have discretion regarding whether to award interest on judgments in divorce proceedings.[8] However, the court should not award interest if injustice would result.[9] In a divorce case, "[w]e review a superior court's ruling on a party's request to reopen evidence for abuse of discretion."[10]

## IV. DISCUSSION

The parties each raise issues related to the court's valuation of PLPT. Johnston appeals the court's characterization and valuation of PLPT's goodwill, the court's date of valuation, and the court's 53/47 division of the overall marital estate. Adkins cross-appeals the court's determination of prejudgment and post-judgment interest. And she challenges the court's denial of her motion to reopen the evidence in light of the BCBS audit.

Notably, Johnston failed to preserve certain arguments for our review where he either failed to make the argument before the superior court or affirmatively waived the argument by making contrary arguments to the superior court. Additionally, in his reply brief, Johnston abandons some arguments from his opening brief[11] and

---

[8]  *McDaniel v. McDaniel*, 829 P.2d 303, 309 (Alaska 1992) ("Although a trial court has discretion whether to award interest on a judgment in a divorce proceeding, when interest is awarded it must be 'to the same extent interest on judgments generally is allowed by statute.' " (quoting *Dixon v. Dixon*, 747 P.2d 1169, 1171 (Alaska 1987))).

[9]  *Morris v. Morris*, 724 P.2d 527, 530 (Alaska 1986) (quoting *Anchorage Asphalt Paving Co. v. Lewis*, 629 P.2d 65, 70 (Alaska 1981)).

[10]  *Snider v. Snider*, 357 P.3d 1180, 1184 (Alaska 2015).

[11]  For example, in his opening brief Johnston raises several challenges based on the argument that the court erred in treating PLPT as marital property. But in his reply brief, Johnston reverses course and asserts that PLPT's status as marital property "is undisputed by the parties."

raises a number of arguments for the first time.[12]  Given that an appellant may not raise issues in a reply brief that were not previously discussed in the original or appellee's brief, these new arguments are forfeited and will not be further addressed.[13]

**A.  The Superior Court Did Not Clearly Err In Its Determination Of PLPT's Goodwill.**

Johnston appeals the court's finding that the goodwill associated with PLPT is 40% personal and 60% enterprise goodwill.  He primarily argues that the court's finding "was not supported by substantial evidence" and "was based on an erroneous interpretation of the evidence."  But in making its decision, the court explained how it evaluated and relied upon aspects of the two expert opinions regarding PLPT's goodwill.  Both parties' experts determined that goodwill existed for the business, though they differed in their breakdown between personal and enterprise.  Based upon the expert testimony, the court concluded that there was goodwill associated with the business.  The court then credited the analysis of Adkins's expert when it came to determining what amount of that goodwill was associated with the enterprise, and thus marketable, and what amount was personal and associated with Adkins.  It explained that it was adopting Adkins's expert's opinion that 40% of PLPT's goodwill was personal because Adkins's expert "was much more familiar with the way the company operate[d] and better understood [Adkins's] role in the company."

---

[12]    These include his arguments that the court erred by violating the operating agreement in its goodwill analysis and that the court failed to correctly apply the legal framework regarding limited liability companies and S corporations when it removed his ownership interest in PLPT.  He also argues for the first time in his reply brief that the court erred by considering the size of the equalization payment in its marital split determination.

[13]    Alaska R. App. P. 212(c)(3) (stating reply brief "may raise no contentions not previously raised in either the appellant's or appellee's brief"); *see also Barnett v. Barnett*, 238 P.3d 594, 603 (Alaska 2010) ("[W]e deem waived any arguments raised for the first time in a reply brief.").

Particularly where the court's findings related to goodwill were based upon its evaluation of the testimony offered by dueling expert witnesses, and where the court explained why it credited this aspect of one expert's opinion over the other, we will not disturb those findings on appeal.[14] The court did not clearly err in finding that PLPT's goodwill was 40% personal and 60% enterprise.

**B.** **The Superior Court Did Not Err In Valuing PLPT As Of The Date Of Separation And Awarding It Fully To Adkins As Of That Time.**

Johnston next argues that the superior court erred in awarding Adkins PLPT as of the date of separation rather than the date of the divorce decree. In *Ogard v. Ogard*, we explained that the superior court should typically value property "as close[ly] as practicable to the date of trial."[15] However, we also acknowledged that "there may be special situations in which the date of separation is more appropriate."[16] And we indicated that where the superior court determines the date of separation to be more appropriate, it should make "specific findings as to why."[17] We have also upheld decisions to choose a date other than the date of trial in some contexts "where the parties [do] not present evidence of a later valuation."[18]

---

[14] *See Hensel v. State*, 604 P.2d 222, 236 (Alaska 1979) (holding that conflict between "fairly evenly balanced" expert testimony is "for the superior court to resolve"); *see also Josephine B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 174 P.3d 217, 222 (Alaska 2007) (explaining that we give "particular deference to the trial court's factual findings when, as here, they are based primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence"), *reh'g granted in part*, (Alaska Jan. 25, 2008).

[15] 808 P.2d 815, 819 (Alaska 1991).

[16] *Id.* at 820.

[17] *Id.*

[18] *Stevens v. Stevens*, 265 P.3d 279, 285 (Alaska 2011) (citing *Brotherton v. Brotherton*, 941 P.2d 1241, 1245 (Alaska 1997)).

In this case, the superior court valued PLPT as of the date of separation, and its explanation for doing so was well supported by the record. The court explained that Johnston's expert — the valuation expert upon whose analysis the court primarily relied — valued PLPT as of the date of separation. Additionally, consistent with its interim order, the court found that Adkins had been singlehandedly running the company from shortly after the date of separation to the date of trial. Johnston still received a salary, but did not provide any services to PLPT during this time.

The court also acknowledged difficulties with awarding Adkins the business as of the parties' date of separation, and then further addressed those difficulties in terms of its property division order. For instance, the court recognized its award of the business as of the separation date essentially allowed Adkins a pretrial distribution whereby she alone was able "to generate income from a marital asset for an extended period of time." Consequently, the court compensated Johnston for these inequities through the award of prejudgment interest.

Additionally, the parties only presented evidence of PLPT's value as of either November 2020 or December 2020. Neither party provided the court with an updated valuation as of the beginning of trial in November 2022. The most accurate and updated valuation analysis before the court, then, did not support a particular valuation as of the date of trial or the date of the divorce decree. In *Brotherton v. Brotherton*, we rejected a party's argument that the superior court erred in its valuation of property as of a certain date where that party had failed "to offer evidence of value at any" other date.[19] We held that, in that context, "no basis exist[ed] for challenging the superior court's valuation determination."[20] Similarly, here, neither party provided the court with evidence of PLPT's value at any time following December 2020. Given

---

[19]    941 P.2d at 1245.

[20]    *Id.*

the evidence presented and the court's careful accounting for the timing of its award of the business, the court did not err when it valued PLPT as of the date of separation and subsequently awarded it to Adkins as of that date.

> ### C. The Superior Court Did Not Abuse Its Discretion In Awarding Johnston 53% Of The Marital Estate And Adkins 47% Of The Marital Estate.

Finally, Johnston appeals the superior court's overall division of the marital estate, contending that the court should have awarded him a greater percentage of the marital estate in light of his reduced earning capacity. Given the court's relevant findings, which are supported in the record, we see no abuse of discretion.

We have concluded that "an equal division of the marital estate is presumptively the most equitable."[21] With this as a starting point, the superior court must then consider the factors outlined in *Merrill v. Merrill* and codified at AS 25.24.160(a)(4) to determine its division.[22] We have further recognized that "[a]n unequal division can be condoned when it is justified by relevant factors identified in the . . . court's findings."[23] Superior courts ultimately have broad discretion in

---

[21]     *Miles v. Miles*, 816 P.2d 129, 131 (Alaska 1991) (citing *Hayes v. Hayes*, 756 P.2d 298, 300 (Alaska 1988)).

[22]     368 P.2d 546, 547 n.4 (Alaska 1962) ("[T]he principal factors to be considered by the trial court in determining the . . . division of property as between the parties are the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.").

[23]     *McDougall v. Lumpkin*, 11 P.3d 990, 993 (Alaska 2000).

determining the equitable allocation of marital assets.[24]  We will only overturn a property division decision if "it is clearly unjust."[25]

Here, the superior court acknowledged in its division of the marital property that Adkins was "getting an income-generating asset."  However, the court also acknowledged that Adkins was going to be subject to significant tax implications related to Johnston's withdrawals from PLPT.  The court also found that, contrary to Johnston's suggestions, he was not completely unable to work and, indeed, was quite skilled in handling business finances.  These findings were based upon Johnston's own testimony regarding his management of the financial aspects of PLPT.  As it is the superior court's function, and not ours,[26] to weigh conflicting evidence and judge witnesses' credibility, we defer to the superior court as the fact-finder and will not re-weigh the evidence related to Johnston's capacity to work.

The court's findings took into account the various factors necessary when deviating from the equal division of the marital estate.  We note that Johnston's assertions regarding the court's overall division of the marital property boil down to an argument that the relevant evidence should be viewed in the light most favorable to him.  But the court's distribution is supported by its factual findings, which in turn are supported by the evidence on record, and further unequal division in his favor is not required by the evidence.  Johnston fails to demonstrate that the court's decision was "clearly unjust,"[27] and we conclude that the court's overall division of the parties' property was well within its discretion.

---

[24]    *Miles*, 816 P.2d at 131.

[25]    *Heustess v. Kelley-Heustess*, 259 P.3d 462, 472 (Alaska 2011) (quoting *Green v. Green*, 29 P.3d 854, 857 (Alaska 2001)).

[26]    *See Josephine B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 174 P.3d 217, 222 (Alaska 2007), *reh'g granted in part*, (Alaska Jan. 25, 2008).

[27]    *Heustess*, 259 P.3d at 472 (quoting *Green*, 29 P.3d at 857).

**D.** **There Was An Abuse Of Discretion In The Award Of Prejudgment Interest, But Not In The Award Of Post-Judgment Interest.**

Adkins cross-appeals, challenging the court's decision to award prejudgment interest in accounting for Johnston's share of PLPT, and post-judgment interest on the equalization payment required by the court's final property order. First, regarding post-judgment interest, Adkins argues that such "interest should only be ordered in the event that the paying party fails to make . . . equalization payments as set out in the payment schedule." She explains that harm to the receiving party begins "[a]t the time of the missed payment" and not before. But we have reasoned that post-judgment interest is awarded to compensate a party "for lost use of the money."[28] Here, rather than order Adkins to pay Johnston the equalization payment required by the court's order in an immediate lump sum of $812,175, the court outlined that Adkins would be permitted to divide the payment into ten payments made over two and a half years. As a result, Johnston would lose the use of the full amount of the sum over time. The court's award of post-judgment interest at the relevant statutory rate[29] appropriately compensates Johnston for this lost use. Such interest is not reserved for use as a punishment,[30] as Adkins argues it should be. It is meant only to "compensate the party to whom the sum is owed for the use of the money during the period of nonpayment."[31] The superior court's award of post-judgment interest was within its discretion.

Regarding prejudgment interest, we have held that when deciding to award such interest in the context of divorce proceedings, the court should take into

---

[28] *Brotherton v. State, Dep't of Revenue, Child Support Servs. Div. ex rel. Brotherton*, 201 P.3d 1206, 1213 n.24 (Alaska 2009) (quoting *Ogard v. Ogard*, 808 P.2d 815, 817 (Alaska 1991)).

[29] AS 09.30.070(a).

[30] *Cool Homes, Inc. v. Fairbanks N. Star Borough*, 860 P.2d 1248, 1257 (Alaska 1993).

[31] *Id.* (citing *Lundgren v. Gaudiane*, 782 P.2d 285, 289 (Alaska 1989)).

account the particularities of each case, including, but not limited to, "the length of the separation, the time between the equitable divorce date and the final judgment, the amount of potential interest, whether the marital property itself earned interest during the separation, whether there was undue delay in bringing about the final judgment, and anything else it deems important."[32]  The purpose of awarding prejudgment interest is to compensate a party "for losing the use of the money between the date [the party] was entitled to it and the date of judgment."[33]

Here, the court awarded Johnston prejudgment interest on his marital share of PLPT between the date of separation and the first day of trial (November 2020 – November 2022), amounting to $165,948.  Adkins first argues it was an abuse of discretion for the court to order prejudgment interest without prior request by the parties or discussion by the court.  Adkins contends that the award of such interest is rare in divorce cases and that she "was never put on notice" of possible prejudgment interest. But we are not persuaded by this argument.  With or without the prior request of the parties, the court was within its discretion to award prejudgment interest in recognition that Adkins was being awarded the income-generating marital business as of the date of separation whereas Johnston's receipt of corresponding funds was delayed.  Indeed, the court explained that the prejudgment interest award "reflect[ed] the fact that Mr. Johnston lost the opportunity to invest or utilize the full value of his share of PLPT as he saw fit."

Adkins next argues that assuming a prejudgment interest award was appropriate, the court abused its discretion in determining the amount of interest owed. She explains that between separation and trial, Johnston received "$697,231 in unearned salary and withdrawals from PLPT's business account."  She argues that the

---

[32]  *Morris v. Morris*, 724 P.2d 527, 530 n.10 (Alaska 1986).

[33]  *Easley v. Easley*, 394 P.3d 517, 522 (Alaska 2017) (quoting *Morris*, 724 P.2d at 529).

court abused its discretion by including this $697,231 in the amount upon which prejudgment interest was owed, because Johnston actually had access to the money during the period between separation and trial. She contends that the court should instead have calculated prejudgment interest based upon the value of his share of PLPT over and above the $697,231 he received between separation and trial.

The court explained its decision by first acknowledging that Johnston "received portions of his share of the value of PLPT" during the time between separation and trial. The court reasoned, however, that "that compensation was obtained piecemeal, over an extended period of time," whereas Adkins "received her share of PLPT — in the form of control over the marital business itself — all at once." While he was able to receive income from PLPT between separation and divorce, Johnston was not able to use "the *full* value of his share of PLPT as he saw fit."

Although we acknowledge the superior court's reasoning, we agree with Adkins that, in this context, it was an abuse of discretion for the court to award prejudgment interest on the entirety of the value of Johnston's share of PLPT for the period between separation and trial. Johnston received a substantial amount of his share of PLPT over a period of time well before trial. Even understanding that this was paid in a piecemeal fashion, it represents a significant sum that Johnston was able to use or invest for a substantial period prior to trial. Given that the purpose of prejudgment interest is to compensate a party "for losing the use of the money between the date [they were] entitled to it and the date of judgment,"[34] and the fact that Johnston received such a substantial amount of the money before the date of judgment, we agree with Adkins that any calculation of prejudgment interest should have accounted for the $697,231 he received between separation and trial. The court's prejudgment interest determination

---

[34] *Id.* (quoting *Morris*, 724 P.2d at 529).

amounted to an abuse of discretion, and we remand for recalculation of prejudgment interest.

**E. The Superior Court Did Not Abuse Its Discretion By Deciding Not To Reopen The Evidence After The BCBS Audit.**

Adkins also cross-appeals the court's decision not to reopen the evidence in light of the BCBS audit. We held in *Snider v. Snider* that when deciding whether to reopen evidence, "a court should consider the importance of the evidence, the diligence of the proponent of the evidence, and the possible prejudice to the other party."[35]

Adkins argues primarily that evidence of the debt owed by PLPT to BCBS is important to the equitable distribution of the marital estate. After trial concluded, but while the court was still considering the evidence, Adkins began receiving recoupment letters from BCBS, which together amounted to $320,155.41 in debt that accrued before the parties' separation. Adkins argues that this should have been considered a marital debt that was accounted for in the court's division of the marital estate. Adkins also explains that she could not have discovered the relevant evidence any sooner because she did not receive the first notice from BCBS until after the trial ended. Adkins further contends that Johnston would not have been prejudiced by introduction of evidence of the debt. She argues that Johnston could have effectively cross-examined the evidence by addressing it on its merits and requesting an updated valuation from his expert.[36]

The superior court declined to reopen the evidence because PLPT belonged solely to Adkins as of the date of separation. While the court made some adjustments to the valuation of PLPT based on actions that took place between the date

---

[35]     357 P.3d 1180, 1186 (Alaska 2015).

[36]     She highlights our decision in *Snider*, which emphasized that the ability to cross-examine new witnesses meant that there would be no prejudice to the other party by the late introduction of the evidence. *Id.* at 1187; *accord Journée N. v. State, Dep't of Health and Soc. Servs., Off. of Child.'s Servs.*, No. S-18151, 2022 WL 1486173, at *6-7 (Alaska May 11, 2022).

of separation and trial, it emphasized that "finality is very important in" divorce cases and this case would "never end if [it kept] making adjustments for the value as . . . things pop up, which they seem to do occasionally in this business."

The court did not explicitly consider the three factors we listed in *Snider*.[37] It did however implicitly acknowledge that the evidence was important and that there was no way for Adkins to have known of this debt prior to or during the trial. The court determined, however, that reopening the proceedings for further evidence could cause great prejudice to the parties, particularly in the event it necessitated further expert analysis and evidence that would extend the litigation even further. The court also reasoned that, as of the date of separation, Adkins became responsible for the profits and the risks associated with the business, regardless of when they came to be discovered. Given the amount of time and process the parties had over the course of the proceedings, and the need for the court to finalize the proceedings, the court's denial of the motion to reopen was within its discretion.

## V. CONCLUSION

We AFFIRM the superior court's decisions related to its determination of PLPT's goodwill, its date of valuation of PLPT, its overall division of the marital estate, its award of post-judgment interest, and its decision not to reopen the evidence following the BCBS audit. We VACATE and REMAND the court's prejudgment interest award for recalculation consistent with this decision.

---

[37] 357 P.3d at 1186 (explaining that court should consider 1) importance of evidence, 2) diligence of proponent of evidence, and 3) possible prejudice to other party when deciding whether to hold record open for additional evidence).