*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TODD HEBER, | ) | |
| | ) | Supreme Court No. S-15355 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-10347 CI |
| v. | ) | |
| | ) | O P I N I O N |
| TAMARA HEBER, | ) | |
| | ) | No. 6930 – August 1, 2014 |
| Appellee. | ) | |
| | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock and Andrew Guidi, Judges.

Appearances: Richard W. Postma, Jr., Law Offices of Mitchell K. Wyatt, Anchorage, for Appellant. Jean W. Sato, Sato & Sato, LLC, Anchorage, for Appellee.

Before: Winfree, Stowers, Maassen, and Bolger, Justices. [Fabe, Chief Justice, not participating.]

BOLGER, Justice.

## I.   INTRODUCTION

In a custody modification proceeding, the superior court found that Todd Heber had a history of domestic violence and awarded Tamara Heber primary physical custody and sole legal custody of the parties' son. Todd filed a motion arguing that this award was void because the assigned judge had received email communications from

Tamara and subsequently disqualified himself. On appeal, we conclude that there was no risk of injustice that required a second judge to set aside the custody award.

Todd also argues that Tamara engaged in fraud because their original dissolution petition stated that there was no domestic violence between them. But the record of the motion proceedings shows that Todd had adequate notice of this issue and that, regardless of the accuracy of the dissolution petition, Tamara's motion to modify custody did not clearly involve fraud.

Todd also argues that the second judge should have been disqualified because he had once reported that Todd's lawyer had a disagreement with another staff member. We conclude that these circumstances do not suggest any disqualifying bias.

## II.     FACTS AND PROCEEDINGS

Todd and Tamara Heber petitioned to dissolve their marriage on August 29, 2011. In their petition, they agreed to joint physical and legal custody of their two minor children and chose not to have the court order a specific visitation schedule.[1] They also indicated that no domestic violence occurred during their marriage. Superior Court Judge John Suddock entered a decree of dissolution incorporating the parties' agreement on December 5, 2011.

On July 27, 2012, Tamara sought an order requiring that their son remain at his current elementary school. She alleged that Todd had decided to enroll their son at a new school without her consent.

At a hearing before the superior court on August 7, the parties testified to their disagreement about their son's education. But the judge noted that their

---

[1]     This appeal only concerns the the parties' minor son. Custody of their other child is not at issue.

disagreement went deeper than education and suggested that Tamara might want to move to modify the custody arrangement concerning the parties' son. She did so on August 9, requesting sole legal custody and primary physical custody with a weekly visitation schedule.

A custody modification hearing was held on August 15 and August 21. During the hearing, Tamara testified that Todd had committed several acts of domestic violence while they were married. She also testified that Todd raped her "at least twice" while the couple was "working to repair [their] marriage." During his own testimony, Todd did not deny that these incidents of abuse and assault occurred. Nor did Todd confront Tamara with the 2011 dissolution agreement, which indicated that no domestic violence had occurred during the marriage.

On August 23, the judge entered a custody modification order. The court awarded Tamara sole legal custody of the parties' son. Because the court found that Todd had committed "more than two acts of domestic violence against" Tamara, it gave Tamara sole physical custody as well.[2] But the court suggested that it would modify the physical custody order once Todd completed a "domestic violence intervention course." Although the court ordered the parties to implement an "alternating week" visitation schedule, it permitted Todd supervised visitation only, until he completed the domestic violence course.

Because Todd was permitted supervised visitation only, the parties and the court had to approve supervisors. The parties communicated with the court by email during this process.

---

[2]     The court noted that AS 25.24.150(j) prohibited it from granting joint physical custody.

On August 24, the person acting as Todd's visitation supervisor informed the court by email that Todd had violated several provisions of the August 23 custody modification order. After a hearing on August 27, the superior court found that Todd had violated its order and therefore altered the visitation schedule again, limiting Todd to visits on two out of every three weekends. The court did not put its oral order into writing at that time.

On September 5, Todd, now represented by counsel, moved for reconsideration and a new custody modification hearing. He argued that he did not receive adequate notice that Tamara would raise allegations of domestic violence at the custody hearing. The superior court denied the motion, noting that "[i]t is not uncommon that domestic violence surfaces unexpectedly in a custody hearing."

On October 29, Todd moved for relief from the existing custody orders and the parties' dissolution agreement under Alaska Civil Rule 60(b)(3). Although he maintained that Tamara's allegations of domestic violence were false, he argued that, since the court had found Tamara's testimony credible, "the logical conclusion is that Tamara misrepresented material facts in the [petition for dissolution]." Therefore, he argued, the dissolution and custody orders were "void for misrepresentation, and the parties should be allowed to fully litigate their property and custody issues."

On October 30, Todd moved to disqualify Judge Suddock. He argued that emails Tamara and his visitation supervisor had sent directly to the judge in August were impermissible ex parte communications that created an appearance of bias requiring disqualification.

Judge Suddock granted the motion for disqualification on December 10. The judge explained that Todd's visitation supervisor sent the judge an email on August 21 requesting that Todd pay her $250 per week for the supervision and reimburse her for gas. The court approved that arrangement, writing "So Ordered" on the

supervisor's email. Although Judge Suddock believed that the approval "was not an order in substance," it appeared to be one. Therefore, he disqualified himself "due to the superficial appearance that the court entered an order binding Mr. Heber to some course, without first hearing from him."

On December 19, Todd moved under Rule 60(b)(4) for relief from the custody modification orders issued on and after August 21. He argued that Judge Suddock had "acted in a manner inconsistent with due process of law" by "engag[ing] in *ex parte* communication with Tamara Heber and her witnesses and extra [–] judicial fact-finding" and by failing to "afford Todd the advance notice required by due process before converting an evidentiary hearing about which school to send the parties' minor child . . . into a full blown custody modification hearing for domestic violence."

The case was reassigned to Superior Court Judge Andrew Guidi on March 11, 2013. The next day, Todd filed a motion to disqualify, arguing that Judge Guidi was biased against his attorney. Judge Guidi denied the disqualification motion two months later, and the denial was referred to Superior Court Judge Erin B. Marston for review. Judge Marston affirmed Judge Guidi's decision.

On October 14, 2013, Judge Guidi also issued an amendment to the August 23 custody modification order. The amended order incorporated changes Judge Suddock had made orally on August 27, 2012, but had never put in writing.

Judge Guidi denied Todd's October 29, 2012 Rule 60(b)(3) motion and December 19, 2012 Rule 60(b)(4) motion. Todd appeals, arguing that the superior court erred when it: (1) denied his motion for Rule 60(b)(4) relief from the August 23 custody modification order; (2) denied his motion for Rule 60(b)(3) relief from the custody modification order; (3) amended the custody modification order without notice or a hearing; and (4) denied his motion to disqualify Judge Guidi.

## III.  DISCUSSION

### A.  Todd's Rule 60(b)(4) Motion Was Properly Denied.

Todd argues that the superior court should have granted his Rule 60(b)(4) motion for relief from the custody modification orders.  He argues that relief from judgment is required because, once the assigned judge engaged in disqualifying conduct, he lost his "power and jurisdiction[] to take any further action in the case," and any orders he issued after that point were void.

Alaska Civil Rule 60(b)(4) provides that a court may relieve a party from a final judgment on the ground that "the judgment is void."  A judgment is void

> only where the court that issued it had no jurisdiction to subject the parties or the subject matter to its control, or where the defendant was not given proper notice of the action and opportunity to be heard, or where the judgment was not rendered by a duly constituted court with competency to render it, or where there was a failure to comply with such requirements as are necessary for the valid exercise of power by the court.[3]

"In the interests of finality, the concept of void judgments is narrowly construed."[4]

Although the denial of most Rule 60(b) motions is reviewed for abuse of discretion, "no question of the [superior] court's discretion is presented by a Rule 60(b)(4) motion seeking relief from a void judgment because the validity of a judgment is strictly a question of law."[5]  Questions of law are reviewed de novo.[6]

---

[3]  *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 891 (Alaska 2013) (internal quotation marks omitted) (quoting *Holt v. Powell*, 420 P.2d 468, 471 (Alaska 1966)).

[4]  *Id.*

[5]  *Id.* at 884 (quoting *Aguchak  v. Montgomery  Ward  Co.*, 520 P.2d 1352,

(continued...)

Todd argues that the custody modification orders are void because they were issued after the assigned judge had engaged in the conduct that eventually led the judge to disqualify himself. Todd relies on *Channel Flying, Inc. v. Bernhardt*, where we vacated a judgment entered by a judge after he had been removed from the case by a peremptory disqualification.[7] That case involved the automatic effect of the peremptory disqualification statute, which states that the judge must be replaced after a challenge has been filed "at once, and without requiring proof[.]"[8] We did not have the occasion to consider whether an appearance of impropriety alone would nullify the proceeding. In general, "a judgment is not void because of disqualification of a judge, but is only voidable on direct attack by appeal or by motion to set it aside."[9] Therefore, the disqualification of a judge is generally insufficient to support relief under Rule 60(b)(4).[10]

But even if Todd had asserted his challenge under the catchall provision of Rule 60(b)(6), this record would not require the superior court to vacate the judgment. As our court of appeals suggested in *Vent v. State*, to determine whether to vacate an

---

[5]     (...continued)
1354 (Alaska 1974)) (internal quotation marks and alteration omitted).

[6]     *Id.*

[7]     451 P.2d 570, 574-76 (Alaska 1969).

[8]     *Id.* at 573 (quoting AS 22.20.022(a)).

[9]     *Smith v. Clark*, 468 So. 2d 138, 141 (Ala. 1985).

[10]    *See Leisnoi*, 307 P.3d at 890 ("The critical question is whether the superior court's 1995 judgment issued in violation of 43 U.S.C. § 1621(a) was void — and thus amenable to a Rule 60(b)(4) challenge — or merely voidable, and not subject to such a challenge.").

allegedly tainted judgment a court should look to the factors outlined by the U.S. Supreme Court in *Liljeberg v. Health Services Acquisition Corp.*:

> (1)    the risk of injustice to the parties in the particular case;
>
> (2)    the risk that the denial of relief will produce injustice in other cases; and
>
> (3)    the risk of undermining the public's confidence in the judicial process.[11]

In this case, there was no risk of injustice that would require relief from the custody modification orders.

Judge Suddock granted Todd's disqualification motion because of the "superficial appearance" that the court had issued an order without first allowing Todd an opportunity to respond. But the "order" in question concerned the amount that Todd would pay his visitation supervisor; it did not concern the merits of the custody decision at all.

It is true that the visitation supervisor's August 24, 2012 emails, in which she alleged that Todd had violated the August 23 custody modification order, related to the merits of the court's decision to alter custody again four days later. But the judge quickly disclosed the contents of the emails and gave Todd ample opportunity to cross-examine the visitation supervisor and respond to her allegations at a hearing on August 27. Therefore, Todd was not prejudiced by the fact that the supervisor first reported his alleged violations in the emails.

Todd also argues that the judge improperly cross-examined one of Todd's witnesses at an August 24 hearing while Tamara was absent. But Todd is mischaracterizing the record. At the August 24 hearing, Todd presented an alternative

---

[11]    *Vent v. State*, 288 P.3d 752, 757 (Alaska App. 2012) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862-64 (1988)).

supervisor for the court's approval. The court asked the proposed supervisor limited questions concerning his ability to act as a supervisor before approving him. It is simply untrue that Judge Suddock "cross-examin[ed] Todd's witness" or "prosecuted Tamara's case." Therefore, Todd was not prejudiced by the judge's conduct at the August 24 hearing.

Todd also alleges that there was an exchange of emails between his visitation supervisor, Tamara, and the assigned judge. He notes that our court of appeals concluded in *State v. Dussault* that an ex parte exchange of emails created an appearance of bias.[12] But, unlike in *Dussault*, there was no *exchange* of emails in this case; there is no indication in the record that the assigned judge responded to any of the emails sent to him by the parties.

Finally, Todd alleges that the judge must have initiated ex parte contact with Tamara by supplying her with his court system email address sometime before the end of the August 21 hearing, when he issued the initial custody modification order. However, Todd points to no evidence that such an exchange actually occurred. And although the record suggests Tamara sent an email message directly to the judge, it is clear that Tamara was not given priority access to the judge or otherwise treated differently from Todd. The record indicates that Todd had the email address of the judge's law clerk. Todd contacted the clerk to schedule a hearing concerning a substitute supervisor, and she promptly set a hearing in response to his email.

Although we conclude that permitting the custody modification order to stand will not cause Todd injustice, we take this opportunity to note that judges should use email to communicate with parties and other persons about court business only on

---

[12]    *See* 245 P.3d 436, 442-43 (Alaska App. 2011).

the occasions authorized by the Alaska Code of Judicial Conduct.[13] There is a significant danger that ex parte email communication, even if well intentioned, will create an appearance of impropriety.[14]

In summary, we conclude that it was proper to deny Todd's motion for Rule 60(b)(4) relief.

## B.    Todd's Rule 60(b)(3) Motion Was Properly Denied.

Todd argues that it was error to deny his Rule 60(b)(3) motion for relief from the custody modification orders.    He argues that Tamara engaged in misrepresentation when she testified at the custody hearing that, contrary to her statement in the parties' 2011 dissolution agreement, Todd committed domestic violence against her during their marriage.  He also argues that Tamara's ex parte communications with Judge Suddock constituted misconduct warranting relief from judgment.  He also argues that he was afforded inadequate notice that Tamara intended to allege domestic violence during the custody hearing.  Finally, he argues that Judge Guidi's summary denial of his Rule 60(b)(3) motion did not adequately state the reasons for the denial.

Under Alaska Civil Rule 60(b)(3), a party may seek relief from judgment on the grounds that "an adverse party" committed "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct." The fraud, misrepresentation, or misconduct must be proven by clear and convincing evidence.[15] And the moving party must prove that the fraud or misconduct "prevented [that party]

---

[13]     *See* Alaska Code Jud. Conduct Canon 3(B)(7)(a)-(e) (outlining circumstances in which judges may engage in ex parte contacts).

[14]     *See Dussault*, 245 P.3d at 443.

[15]     *Alaskan Adventure Tours, Inc. v. City & Borough of Yakutat*, 307 P.3d 955, 960 (Alaska 2013).

from fully and fairly presenting its case at trial."[16]  "We review the denial of a Rule 60(b)(3) motion for abuse of discretion."[17]

First, Todd argues that Tamara engaged in misrepresentation when she testified that Todd assaulted her during their marriage.  He argues that Tamara's testimony during the custody proceeding was perjury because she "swore under oath and penalty of perjury that no domestic violence occurred during the marriage" in the parties' 2011 dissolution agreement.

But Tamara's prior sworn statement is not clear and convincing evidence that her testimony during the custody hearing was false.  Although the two statements contradict, it is just as likely that Tamara's *prior* statement was false and her more recent testimony truthful.[18]  Therefore, the contradiction between the dissolution petition and Tamara's testimony at trial does not establish that she committed fraud; it merely calls into question the credibility of her statements.

Moreover, it is well established in Alaska that, "in custody matters involving domestic violence," the superior court must "look back to events that occurred before the initial custody order if [they were] not adequately addressed at the initial custody determination or subsequent proceedings."[19]  This rule recognizes that the

---

[16]     *Id.*

[17]     *Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 8 (Alaska 2014).

[18]     And Todd did not deny during the hearing that the alleged domestic violence occurred.

[19]     *McAlpine v. Pacarro*, 262 P.3d 622, 626 (Alaska 2011) (citing *Williams v. Barbee*, 243 P.3d 995, 1001, 1002-03 (Alaska 2010); *Michele M. v. Richard R.*, 177 P.3d 830, 831, 835-36 (Alaska 2008)).

presumption against a custody award to a parent with a history of domestic violence[20] was established in order "to decrease the likelihood that children would be placed in the custodial household where domestic violence exists."[21] That is, because "the ultimate focus in the custody modification context is the best interests of the children,"[22] we must disregard the stipulation in the dissolution petition even if that result is unfair to one of the parents.

Second, Todd argues that he was not given notice that Tamara would testify to domestic violence during the hearing, and therefore, he had inadequate time to prepare a defense against those allegations. He argues that Tamara was required under several Alaska statutes to plead domestic violence in the petition for dissolution and her motion to modify custody. But none of those statutes requires a party to plead domestic violence in a divorce or custody proceeding.[23] Todd had ample opportunity to prepare to respond to Tamara's allegations during the six days between the August 15 and August 21 hearings. But Todd did not attempt to refute Tamara's allegations, either when he cross-

---

[20]    *See* AS 25.24.150(g).

[21]    *Williams*, 243 P.3d at 1001.

[22]    *Id.* (internal quotation marks omitted) (quoting *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998)).

[23]    *See* AS 25.24.210(e) (requiring that a petition for dissolution state whether either spouse has been charged with a crime involving domestic violence and whether either spouse was subject to a domestic violence protective order but not requiring the parties to state whether domestic violence otherwise occurred); AS 25.24.220(h) (requiring the superior court to view dissolution agreements with a "heightened level of scrutiny" if either spouse was charged with a crime involving domestic violence, if either spouse was subject to a domestic violence protective order, or if "there is evidence that a party committed a crime involving domestic violence"); AS 25.24.230(b) (list of findings the superior court must make before entering a decree of dissolution, none of which involves domestic violence).

examined her or when he presented his own testimony. The superior court even offered to give the parties more time to prepare, but Todd insisted that the court make a custody decision as soon as possible.

Third, Todd argues that Tamara engaged in misconduct by sending ex parte emails to the assigned judge. But, as we have already explained above, those ex parte communications did not prevent Todd from "fully and fairly presenting [his] case at trial."[24]

Finally, Todd argues that this court should remand the order denying his Rule 60(b)(3) motion because the superior court did not adequately explain the basis for the denial. But the basis for the superior court's decision to deny Todd's motion is clear from the record as set forth above. We conclude that it was not an abuse of discretion to deny Todd's Rule 60(b)(3) motion.

## C. The October 14, 2013 Order Amending The August 23, 2012 Custody Modification Order Was Not Issued Without Due Process.

Todd argues that the superior court amended the August 23 custody modification order without providing Todd an opportunity to be heard. But the amended order merely put into writing changes that Judge Suddock imposed orally at the end of the August 27 hearing.

Todd also argues that Judge Guidi wrongfully deleted the language in the August 23, 2012 custody modification order providing that, once Todd completes the domestic violence course, "the court will presumptively grant joint custody." But Alaska Statute 25.24.150(a) provides that a court with jurisdiction may "make, modify, or vacate" a custody order if such action seems "necessary or proper." As the superior court explained in an October 29, 2013 "Order on Request for Clarification," because

---

[24] *See Alaskan Adventure Tours, Inc. v. City & Borough of Yakutat*, 307 P.3d 955, 960 (Alaska 2013).

"the trial court cannot presumptively grant custody on the condition that a parent has completed a" domestic violence intervention course,[25] the court therefore "interpret[ed] Judge Suddock's Aug. 23, 2012 order as permitting a hearing to determine whether the presumption against Mr. Heber having custody has been overcome, which revolves around proof that he has been rehabilitated." The superior court was well within its discretion when it modified the August 23 order to make it conform to Alaska law.[26]

Finally, Todd argues that the superior court reimposed the "supervised visitation" requirement despite the fact that Todd had already completed the domestic violence intervention course. However, because the superior court released Todd from the supervision requirement on November 26, 2013, this claim is moot.

We conclude that the superior court did not err when it issued the October 14, 2013 order without further notice and hearing.

### D.     Todd's Motion To Disqualify Judge Guidi Was Properly Denied.

Todd argues that Judge Guidi should have disqualified himself because the judge is biased against Todd's attorney. Todd alleges that the judge previously retaliated against Todd's attorney by "knowingly or recklessly spreading a provably false rumor about" the attorney after the attorney reported sexual and racial discrimination and harassment by Alaska Court System employees.

---

[25]     *See Stephanie F. v. George C.*, 270 P.3d 737, 754 (Alaska 2012) ("Even if a parent with a history of domestic violence overcomes the statutory presumption, he or she is not necessarily entitled to custody; a complete analysis of the best interest factors must be undertaken.").

[26]     *See* AS 25.24.150(a).

A judicial officer must disqualify himself if he "feels that, for any reason, a fair and impartial decision cannot be given."[27] For example, the Alaska Code of Judicial Conduct requires disqualification where "the judge has a personal bias or prejudice concerning . . . a party's lawyer."[28] Disqualification is also required where, given the facts, a reasonable person might question a judge's impartiality.[29]

A judge's decision that he is actually capable of conducting a fair trial is reviewed for abuse of discretion.[30] The separate question whether a judge's participation in a case would lead reasonable people to question his ability to be fair is a question of law reviewed de novo.[31]

Todd alleges that his attorney was subject to sexual harassment and racial discrimination while his attorney was a state district court judge and that the Alaska Commission on Judicial Conduct retaliated against his attorney for reporting the harassment and discrimination. Todd alleges that Judge Guidi was involved because, when questioned about his experience working with the attorney when both were in private practice, Judge Guidi reported that the attorney had been involved in a staff dispute.

---

[27] AS 22.20.020(a)(9).

[28] Alaska Code Jud. Conduct Canon 3(E)(1)(a).

[29] *See Peterson v. Swarthout*, 214 P.3d 332, 339 (Alaska 2009) ("[T]he [disqualification] statute requires a judge to consider the appearance of partiality in addition to actual bias . . . .").

[30] *Hymes v. DeRamus*, 222 P.3d 874, 880 (Alaska 2010); *Phillips v. State*, 271 P.3d 457, 459 (Alaska App. 2012).

[31] *Griswold v. Homer City Council*, 310 P.3d 938, 941 (Alaska 2013); *Phillips*, 271 P.3d at 468.

But the record contains no evidence that Judge Guidi's actions were motivated by bias or prejudice.  The facts simply do not suggest real or apparent bias.

Todd also argues that Judge Marston, who reviewed Judge Guidi's decision not to disqualify himself, erred by failing to hold a hearing on the disqualification motion under AS 22.20.020(c).  Although AS 22.20.020(c) provides that the question of disqualification will be "heard and determined by another judge," it also provides that the "hearing may be ex parte and without notice to the parties or judge."  Therefore, AS 22.20.020(c) does not entitle Todd to the evidentiary hearing he requested.

## IV.    CONCLUSION

We AFFIRM the superior court's judgment.