NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JUDY AZZAM, | ) | |
| | ) | Supreme Court No. S-16738 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-04-03967 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| WALID AZZAM, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1700 – October 17, 2018 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances:  Judy D. Azzam, pro se, Everson, Washington, Appellant.  Walid Azzam, pro se, Anchorage, Appellee.

Before:  Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.    INTRODUCTION

Judy Azzam appeals the superior court's order reducing the child support payments of her ex-husband, Walid Azzam.  Judy contends that Walid underreported his income by falsely claiming he was a mere employee, rather than the owner, of Wally Trucking Company.  She argues, among other things, that the superior court erred in crediting Walid's testimony about his relationship with Wally Trucking and in not requiring Walid to disclose certain financial documents.  We conclude that the superior

---

\*        Entered under Alaska Appellate Rule 214.

court did not clearly err in determining Walid's income, and we find Judy's other arguments to be meritless. We therefore affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Background

Judy and Walid divorced in 2004. At the time of their divorce, they had one child; they now have three children. Judy has primary physical custody of the children, and the parties share legal custody.

In the years following their divorce, Judy and Walid got back together twice. They separated for a third and apparently final time in 2013, and in August 2014 the superior court issued a child support order. The court determined that Walid had an adjusted annual income of around $58,000 based on Walid's "updated financial information, including his most recent paystubs," and the court required Walid to pay Judy $1,592 per month, effective January 1, 2014.

Judy subsequently moved the superior court to recalculate child support, alleging that Walid was the owner of a business called Wally Trucking Company and that he had underreported his income to the court. The court granted the motion, determining, based on Walid's 2013 federal tax return, that Walid's annual income was about $300,000. The court issued a revised child support order requiring Walid to pay $3,300 per month.[1]

---

[1] Judy later moved the superior court to make the revised award retroactive, but the court denied the motion on the ground that "[r]etroactive modification of child support orders is impermissible." Judy appealed the superior court's retroactivity ruling to this court; we dismissed her appeal due to her failure to file a brief. In the present appeal, Judy renews her argument that the superior court "err[ed] when stating child support could not be retroact[ive]." But Judy has no right to a second appeal of the retroactivity ruling. *See* AS 22.05.010(a). Moreover her present appeal is not timely vis-à-vis that ruling. *See* Alaska R. App. P. 204(a)(1). We thus do not review the

(continued...)

In early 2015 Walid filed a motion to reduce his child support obligation. He asserted that his 2013 tax return reflected "a one time lump sum influx in income as he sold . . . Wally Trucking." He further asserted that he was "now just an employee of Wally Trucking" making $68,100 per year. Judy disputed Walid's claim that he had sold Wally Trucking, and Walid withdrew his motion.

## B.     Proceedings On Walid's 2016 Motion To Modify Child Support

Walid filed a second motion to modify child support in March 2016. He again claimed he was "an employee of Wally Trucking," with annual wages of $66,800. Judy opposed the motion, arguing that Walid did not disclose his full income and still owned Wally Trucking. Walid submitted to the superior court his 2015 tax return which reflected a total income of $68,872 — $66,800 in wages plus a $2,072 permanent fund dividend.

### 1.     First evidentiary hearing

The superior court held an evidentiary hearing on Walid's motion in June 2016. Both parties were self-represented. The court acknowledged Judy's position that Walid was not disclosing his full income, and the court questioned Walid under oath about his income and his history with Wally Trucking.

Walid testified that he had started Wally Trucking in 2005 with money from his brother. Walid claimed that his brother had bad credit and that they therefore "[p]ut [the company] under [Walid's] name" so the company could obtain financing. Thus according to Walid, Wally Trucking was not "[his], really, to begin with." Walid stated

---

[1]     (...continued)
retroactivity ruling. *See Miller v. Hancock*, No. S-15796, 2016 WL 106090, at *5 (Alaska Jan. 6, 2016) (declining to review a child support order because it was a final judgment and was not appealed in a timely manner). For similar reasons we reject Judy's attempt to appeal a 2011 child support order. *See id.*

that he started transferring "everything to his [brother's] name" in 2013, but that it "[took] time" to do so. He testified that he "finally got it all done in 2015" and that his 2015 tax return reflected his true income as an employee, not owner, of Wally Trucking. He claimed that although his tax returns from earlier years showed a much higher income — reflecting his nominal ownership of Wally Trucking — he had not actually been making that much money because he was not the true owner.

Judy cross-examined Walid using his financial records. These records showed that even after Walid had supposedly transferred Wally Trucking to his brother, Walid had deposited large checks from customers (including one for $18,000) into an account held jointly by Walid and Wally Trucking. The records also showed that Walid had withdrawn substantial sums from the account in the form of cash and cashier's checks made out to Walid.

In response Walid testified that some customers continued to write their checks to Wally Trucking, rather than to his brother's company, and that he thus had to deposit the checks into the joint account. Walid also stated that there were two business loans tied to this account. He explained that he would typically deposit checks into the joint account, apply some of the funds toward the loans, withdraw the remaining funds, and deposit them into his brother's account.

Following Walid's testimony, Judy told the court that she knew "for a fact" that Walid's brother "had nothing to do" with the start of Wally Trucking. Judy claimed a "lifestyle investigation" would reveal that Walid, not his brother, was and is the owner of Wally Trucking.

After hearing from the parties, the superior court concluded, "Based on what I'm hearing today, I don't have enough to say [Walid's 2015] tax return isn't completely truthful." Nevertheless, the court held Walid's motion to modify child support in abeyance and issued an order allowing Judy to obtain further discovery. The

order specifically authorized Judy to obtain Walid's tax return directly from the IRS and to receive "access to any and all information regarding [Walid's] financial information, including but not limited to wages, distributions, and banking statements." Walid was required to sign any needed releases.

### 2. Status hearings

Judy and Walid attended a status hearing in November 2016. At that time it came to light that Walid had not provided Judy with a release to obtain his banking records nor had he provided an IRS release so Judy could obtain his 2015 tax return. The court ordered Walid to provide Judy with the appropriate releases.

There was another status hearing in January 2017. Judy acknowledged that Walid had finally provided her with a release for his banking records, but contended that the release authorized her to receive records only from March 2016 onwards. Judy conceded, though, that Walid had provided his January and February 2016 statements directly to her. Judy also acknowledged that Walid had provided an IRS release, but she said she wanted a broader release that would enable her to obtain more documents.

The superior court expressed that it was "a little bit hesitant" to order Walid to provide additional documents; the court nonetheless instructed Judy to file with the court any further releases she wanted Walid to sign. In response Judy stated that she was mostly "okay with what" Walid had submitted thus far and that she wanted only a few additional documents — specifically, Walid's credit report and six months of statements for his open credit card accounts. The court ordered Walid to provide these documents.

### 3. Second evidentiary hearing

The superior court held a second evidentiary hearing on Walid's motion in April 2017. At the outset the court stated — without objection from Judy — that Judy had received the financial information she had sought and that the parties "should be ready to go."

Walid testified, for a second time, about his income and relationship with Wally Trucking. He stated that he had started Wally Trucking in 2005 with his brother, who had provided "the money" for the business. Judy impeached this testimony using Walid's 2010 affidavit, which stated — with no mention of Walid's brother — that Walid had "bought [his] trucking company in 2005" and that he "own[ed]" the company. Later in the hearing, Walid testified that he had sold Wally Trucking to his brother for $250,000 in 2013 (as Walid had claimed in his first withdrawn motion to modify child support). Walid stated that he no longer owned Wally Trucking and that he was working as a truck driver for the company.

Judy confronted Walid with various documents — for example, a business license he obtained in 2014 — that seemed to show Walid's continued involvement in the management of Wally Trucking. Walid explained, however, that it had taken him a substantial period of time to get all of the business transferred over to his brother.

Next Judy questioned Walid again about the bank account held jointly by Walid and Wally Trucking. Walid agreed with Judy's statement that there had been "around $200,000 running through" this account in 2016 — despite his purported wages of about $66,000. But Walid claimed, as he had at the first evidentiary hearing, that he had deposited these funds into the joint account on behalf of his brother. Judy asked Walid why $7,000 had been deducted from the joint account to pay Walid's child support. Walid responded, "I wish really they didn't do that, but it went and took money that's not even mine." Judy also asked Walid why money had been taken out of the account to pay for a personal vehicle, a Dodge Durango. Walid said he "really [did not] remember." Finally Judy asked Walid to explain why he had withdrawn money — totaling tens of thousands of dollars — from the account in the form of cashier's checks made out to himself, rather than to his brother. Walid answered that he did so to save money — the bank charges $20 when the payee is not an account holder.

Judy also testified. She stated — as she had at the first hearing — that she "was with Walid when he started the business" and "[knew] for a fact [that Walid's brother] never had any active role." She asserted that Walid's brother had multiple businesses registered in his own name and that he had occasionally borrowed money from her and Walid.

At the end of the hearing, the superior court ordered Walid to file his 2016 tax return with the court.

### 4. Order granting Walid's motion to modify child support

Walid did not submit his 2016 tax return as ordered by the superior court; he instead submitted his 2016 W-2 from his brother's company, Azzam Investment. Nonetheless the court granted Walid's motion to modify child support. The court expressly rejected Judy's position that Walid was lying about his nonownership of Wally Trucking:

> At the hearing, [Walid] credibly testified that he did, in fact, sell his business to his brother several years ago. He also credibly explained why funds still go into his Wally Trucking Company bank account — some customers have continued to write checks to Wally Trucking Company, instead of to [Walid's] brother's company, so [Walid] deposits the checks into the account and then distributes the money to his brother. [Walid] also credibly testified that it took time to effectuate the details of the sale, such as by transferring the business license. It is also important to note that [Walid's] tax return history reflects sale of the business and thereafter, employee wages. Specifically, in 2015, [Walid] had W-2 wages of $66,800, and for 2016, he earned $60,500 in wages.

The court calculated Walid's child support obligations using the $60,500 in wages reported on his 2016 W-2.

### 5.     Additional litigation

Judy filed a motion for reconsideration. Among other things, she contended that Walid "never handed [in] any evidence or [t]ax papers pertaining to the sale of Wally Trucking." Judy further argued that because Walid had turned in a W-2 rather than his 2016 tax return, the court had no way to determine whether Walid had received additional income from rental property. The superior court denied reconsideration. Judy also filed a motion for a new trial and a second motion for reconsideration, both of which the superior court denied.

## III.   DISCUSSION

### A.   The Superior Court Did Not Clearly Err In Determining Walid's Current Income.

Judy argues that the superior court erred when it found that Walid was an employee of Wally Trucking with annual wage income of $60,500, rather than an owner of that company with a much larger income. We review the superior court's decision to modify child support for abuse of discretion,[2] and we review the court's underlying factual findings concerning a parent's income for clear error.[3] We find clear error when we are "left with a definite and firm conviction that the superior court has made a mistake."[4] The superior court's factual findings are entitled to " 'particular deference' . . . when they are based primarily on oral testimony, because the trial court, not this

---

[2]     *See Holmes v. Holmes*, 414 P.3d 662, 667 (Alaska 2018).

[3]     *See Farr v. Little*, 411 P.3d 630, 634 (Alaska 2018); *see also Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014).

[4]     *Wiegers v. Richards-Wiegers*, 420 P.3d 1180, 1182 (Alaska 2018) (quoting *Ethelbah v. Walker*, 225 P.3d 1082, 1086 (Alaska 2009)).

court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[5]

We are not left with a definite and firm conviction that the superior court erred in determining Walid's income. Walid testified that he sold Wally Trucking and became an employee of the company. Walid's 2015 tax return showed that he did not receive any business income in 2015, corroborating his testimony that he was no longer an owner of Wally Trucking. Moreover Walid's 2015 tax return and 2016 W-2 indicated that his wage income was approximately $60,000-$67,000 per year. There is thus support in the record for the superior court's conclusion that Walid was an employee of Wally Trucking with a 2016 wage income of $60,500.

Judy contends, though, that the superior court erred in finding "that the 2013 taxes reflected the sale of Wally Trucking." Judy correctly points out that Walid's 2013 tax return showed only business income from Wally Trucking, not capital gains or losses or other information that one might report following the sale of a business.[6] But it does not appear that the superior court viewed Walid's 2013 tax return as itself solely documenting the sale of Wally Trucking. Rather the court viewed Walid's "tax return

_____

[5]     *Snider v. Snider*, 357 P.3d 1180, 1190 (Alaska 2015) (quoting *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013)); *see also Kristina B. v. Edward B.*, 329 P.3d 202, 208 (Alaska 2014) (explaining that the superior court is "in a better position than we are to weigh the evidence and assess the credibility of witnesses").

[6]     *See* INTERNAL REVENUE SERV., DEP'T OF THE TREASURY, PUB. NO. 544, SALES AND OTHER DISPOSITIONS OF ASSETS 24 (2018), https://www.irs.gov/pub/irs-pdf/p544.pdf ("The sale of a business usually is not a sale of one asset. Instead, all the assets of the business are sold. . . . [T]hese assets must be classified as capital assets, depreciable property used in the business, real property used in the business, or property held for sale to customers, such as inventory or stock in trade."). We note that Walid conceded at the second evidentiary hearing that he "maybe . . . did some stuff wrong . . . , like the way we file[d] or the way we transferr[ed] . . . names."

*history*"[7] — including the 2013 tax return, which reported business income, and the 2015 tax return, which did *not* report business income — as corroborating Walid's testimony that he had sold Wally Trucking.

Judy also contends that Walid's testimony was not credible. She highlights Walid's arguably inconsistent statements concerning the ownership of Wally Trucking: (1) his 2010 affidavit testimony that he owned Wally Trucking, (2) his evidentiary-hearing testimony that his brother partially owned Wally Trucking from the start, and (3) his evidentiary-hearing testimony that he sold Wally Trucking to his brother for $250,000 in 2013. Furthermore Judy finds it significant that Walid asserted in his 2010 affidavit that he started Wally Trucking while the parties were separated. She claims that this is an example of Walid's untruthfulness because, according to her, the parties had gotten back together by that time.

Judy highlighted the perceived inconsistencies in Walid's statements in her closing argument at the second evidentiary hearing, and the superior court expressly acknowledged Judy's allegation that Walid had lied about when he started Wally Trucking. The court nonetheless determined that these circumstances did not undermine Walid's testimony — as corroborated by Walid's tax documents — that he was no longer an owner of Wally Trucking. We are not firmly convinced that the superior court was mistaken in crediting Walid's testimony and in weighing the evidence in this manner.[8]

Judy argues that the superior court "err[ed] in not calculating all available income in the calculation of child support." Judy notes that according to Walid's bank

---

[7]     Emphasis added.

[8]     *See Snider*, 357 P.3d at 1190; *Harris v. AHTNA, Inc.*, 193 P.3d 300, 307 (Alaska 2008) ("[C]lear error is not demonstrated by merely showing a conflict in the evidence." (quoting *Preferred Gen. Agency of Alaska, Inc. v. Raffetto*, 391 P.2d 951, 953 (Alaska 1964))).

statements and testimony, Walid deposited tens of thousands of dollars into his joint Wally Trucking account in 2016 and withdrew similarly large sums in the form of cash and cashier's checks in his own name. But the superior court expressly credited Walid's explanation that "some customers ha[d] continued to write checks to Wally Trucking . . . instead of to [Walid's] brother's company, so [Walid] deposit[ed] the checks into the account and then distribute[d] the money to his brother." As explained above, we are not firmly convinced the court erred in crediting Walid's testimony.

Walid's bank statements appear to show that Walid used some of the money in the joint Wally Trucking account for personal expenses, like child support and a car payment. The superior court did not make an explicit finding on this issue. But Walid testified that the money withdrawn to pay child support was "not even [his]," indicating that the money was withdrawn from the Wally Trucking account mistakenly and without his consent. And the $600 car payment constituted only a small fraction of the $49,300 withdrawn from the account during that month. These payments thus do not undermine the superior court's determination that Walid was only an employee of Wally Trucking or show that Walid's income was substantially higher than the $60,500 in wages he reported for 2016.

Judy notes some evidence that Walid "still ha[d] control" of Wally Trucking. For instance, Walid paid for a business license in 2014. But Walid explained that it took a while after 2013 for him to fully transfer the business to his brother, and the superior court expressly credited this testimony. Thus the evidence that Walid had some control of Wally Trucking after 2013 does not undermine the superior court's finding that Walid was no longer an owner of the company.

Finally Judy argues that the superior court erred in relying on Walid's 2016 W-2 instead of his 2016 tax return, which Walid failed to submit. She notes that the W-2

did not reflect any nonwage income Walid may have had.[9] But Walid testified that he had disclosed his full income; the superior court did not clearly err in crediting this testimony. Moreover, the court did not err in deeming Walid's 2016 W-2 — in conjunction with his 2015 tax return and his testimony — sufficient to establish his income for purposes of Alaska Civil Rule 90.3.[10]

**B. The Superior Court Did Not Plainly Err In Failing To Address Walid's Purported Abuse Of The Discovery Process.**

Judy argues that the superior court erred in its "final judgment[] of child support," as "discovery abuse was present, and due process not followed." She contends that Walid failed to provide a full release for his 2016 banking records and notes that he submitted his 2016 W-2 to the court instead of his 2016 tax return, in violation of the court's order. We ordinarily review discovery rulings for abuse of discretion.[11] But Judy did not timely raise her discovery arguments in the superior court; she thus is required

---

[9] We note that Walid separately disclosed some nonwage income — his permanent fund dividend — in a DR-305 affidavit and in his 2015 tax return.

[10] *See* Alaska R. Civ. P. 90.3 cmt. III.E ("The court must examine all available evidence to make the best possible calculation."); *id.* cmt. VIII.A ("Suitable documentation of earnings might include paystubs, employer statements, or copies of federal tax returns."); *Byers v. Ovitt*, 133 P.3d 676, 681 (Alaska 2006) (noting "the importance of 'tak[ing] all evidence necessary to accurately reflect the parties' economic reality' " (alteration in original) (quoting *Routh v. Andreassen*, 19 P.3d 593, 595-96 (Alaska 2001))).

[11] *See Olivera v. Rude-Olivera*, 411 P.3d 587, 590 (Alaska 2018) (" 'We review discovery rulings . . . for abuse of discretion.' 'A decision constitutes abuse of discretion if it is "arbitrary, capricious, [or] manifestly unreasonable, or [if it] stems from an improper motive." ' " (footnote omitted) (quoting *Gunn v. Gunn*, 367 P.3d 1146, 1150 (Alaska 2016))).

to demonstrate plain error.[12] She fails to do so.

Judy did not object to the superior court's statement, at the outset of the second evidentiary hearing, that she had received all the financial information she had sought. Thus the court had no reason to doubt that Walid had provided an adequate release for his banking records; the court moreover lacked a basis on which to decide an appropriate remedy or sanction for the now-alleged discovery abuse. The court did not plainly err in failing to address an alleged discovery violation of which it had no reason to be aware. Moreover Judy has not explained how the alleged discovery violation prejudiced her.

Furthermore Judy did not request that Walid submit his 2016 tax return to her or the court until after the court had already granted Walid's motion to modify child support.[13] The court, sua sponte, had previously ordered Walid to submit the tax return, but the court did not indicate that it viewed the tax return as indispensable for

---

[12] *See Stephanie W. v. Maxwell V.*, 319 P.3d 219, 225-26 (Alaska 2014) (indicating that we review unpreserved discovery arguments for plain error); *see also Small v. Sayre*, 384 P.3d 785, 788 (Alaska 2016) ("We will find plain error 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' " (quoting *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001))).

[13] We note that the superior court ordered Walid to submit his 2016 tax return by April 28, that Walid submitted his W-2 on April 25, and that the court granted Walid's motion to modify child support on May 12, 2017. Judy thus had an opportunity to object to Walid's failure to submit his tax return before the court issued its ruling; nonetheless she failed to do so. In the record there is an unsigned and undated "Reply to Response to Motion for Motion [sic] Submitting W2"; in this document, Judy noted that Walid submitted a W-2 and that the court had ordered him to submit a tax return. The superior court did not rule on this document — perhaps because it was not properly filed or styled as a motion. *See* Alaska R. Civ. P. 7(b), 11(a). More importantly, this document did not request that the court enforce its earlier requirement that Walid submit his 2016 tax return or argue that the court needed to review the tax return before ruling on Walid's motion to modify child support.

determining Walid's income. There was in fact other evidence in the record as to Walid's income — namely Walid's testimony, his 2015 tax return, and his 2016 W-2. Moreover Walid's motion had been pending for over a year by the time of the second evidentiary hearing. In light of these circumstances, the superior court did not plainly err by failing to sua sponte enforce its earlier order that Walid submit his 2016 tax return.[14]

Judy argues that she had a right to receive Walid's 2016 tax return under Civil Rule 90.3(e)(2). In her reply brief, she states — without citation to the record[15] — that a "request was made" under this rule. But Judy has not shown that she submitted "a written request" to Walid for his 2016 tax return or that she provided Walid with "documentation of . . . her [own 2016] annual income" — prerequisites for obtaining income information under the rule.[16]

### C. The Superior Court Did Not Plainly Err In Failing To Make Findings On Whether Walid Was Voluntarily Underemployed.

Judy argues that the superior court erred in failing to consider the issue of "willful underemployment." Civil Rule 90.3(a)(4) provides that the superior court "may calculate child support based on a determination of the potential income of a parent who

---

[14] *Cf. Olivera*, 411 P.3d at 591-92 (rejecting argument that trial court abused its discretion by failing to require ex-spouse to disclose tax return, explaining that "even if there were gaps in [the ex-spouse's] disclosures . . . , [the appellant] ha[d] not demonstrated that the omissions harmed his case"); *Ward v. Urling*, 167 P.3d 48, 53 (Alaska 2007) (holding that trial court did not err in adopting master's child-support recommendation that was issued before parent submitted tax return).

[15] *See* Alaska R. App. P. 212(c)(1)(I) (explaining that an appellant's argument must be supported by "citations to the . . . parts of the record relied on").

[16] Alaska R. Civ. P. 90.3(e)(2).

voluntarily and unreasonably is unemployed or underemployed. . . .  Potential income will be based upon the parent's work history, qualifications, and job opportunities."

Significantly Judy did not preserve the issue of voluntary underemployment in the superior court.  At the first evidentiary hearing, the court told Judy that she could file a "motion to impute income" if she wanted the court to consider the issue of voluntary underemployment.[17]  But Judy did not file a motion to impute income, nor did she argue voluntary underemployment during her closing argument at the second evidentiary hearing or at any other point in the proceedings.  Instead she argued that Walid was misrepresenting and concealing his income.

Because Judy did not preserve her voluntary-underemployment argument in the superior court, we will not reverse unless she establishes plain error.[18]  There is no compelling evidence of Walid's voluntary and unreasonable underemployment in the record.  Walid denied that he made significantly less money as an employee for Wally

---

[17]     The superior court brought up this issue in response to comments made by Judy that arguably indicated she was interested in asserting voluntary underemployment.  But these comments were not sufficient to preserve Judy's voluntary-underemployment argument because, as explained below, Judy did not renew her argument at the second evidentiary hearing or comply with the court's directive that she file a motion to impute income.  *See Sengupta v. Univ. of Alaska*, 139 P.3d 572, 580-81 (Alaska 2006); *Torres v. State*, 519 P.2d 788, 794 n.17 (Alaska 1974).

[18]     *See Small v. Sayre*, 384 P.3d 785, 788 (Alaska 2016) ("[W]e review issues that were not raised before the trial court for plain error.").  Had Judy preserved her argument, we would instead review for abuse of discretion. *See Reilly v. Northrop*, 314 P.3d 1206, 1212 (Alaska 2013) ("We review under an abuse of discretion standard the court's decision to impute income . . . .").

Trucking than he previously did as the nominal owner of the company,[19] and the superior court generally credited Walid's testimony.[20]

Even if Walid *did* make less money as an employee, this would not in itself constitute voluntary and unreasonable underemployment, as "Rule 90.3(a)(4) does not rigorously command pursuit of maximum earnings."[21]  The only other evidence of voluntary underemployment that Judy cites is that Walid supposedly "showed intent [to willfully under-earn] during [his] closing statement [when] he said he could quit working for his brother and go to work for someone else to pay less child support."  But Judy misconstrues Walid's statement.[22]  Judy has not demonstrated that the superior court

---

[19]    In his testimony, Walid agreed with the following characterization by the superior court:

> You used to basically file the tax returns on behalf of the company, but you weren't making that money. . . . [Y]our child support was calculated based on that, and it was quite high.  And now . . . you don't take that responsibility any more, you don't file that tax return for the company, and your real income is what's reflected on [your 2015] tax return.

[20]    *See Reilly*, 314 P.3d at 1212 ("Assessing whether a parent is voluntarily underemployed is a question of fact, and we review factual findings for clear error.").

[21]    *Beaudoin v. Beaudoin*, 24 P.3d 523, 530 (Alaska 2001); *see id.*  ("The rule's more modest objective is to give courts broad discretion to impute income based on realistic estimates of earning potential in cases of voluntary and *unreasonable* unemployment or underemployment." (emphasis in original)).

[22]    Walid in fact said:  "I'm sorry, but, you know, I could go and get another job, if this is [sic] really make [Judy] happy.  But the problem — I'm not going to get paid same [the] amount as what I'm getting now. . . .  I know I'm getting paid good with [my brother's] company."  This was not an expression of Walid's intent to under-earn but rather an apparent expression of his frustration about Judy's refusal to accept his claim that he was an employee, not owner, of Wally Trucking.

plainly erred in not explicitly addressing the possibility that Walid was voluntarily underemployed.[23]

**D.    Judy Has Not Shown That The Superior Court Was Biased Or Appeared To Be Biased.**

Judy argues that the superior court judge "appear[ed] to hold a bias" against her. She claims that the court "harshly interrupted her and accused her of holding up the court" and that it generally "used harsh language towards" her without "fault[ing] [Walid] on discovery abuse."

Judy presented her claim of judicial bias to the superior court. "A judge's decision that [she] is actually capable of conducting a fair trial is reviewed for abuse of discretion."[24]   To the extent Judy now argues that the court's actions gave rise to a reasonable *appearance* of bias, that issue does not appear to have been raised in the superior court.[25]  We have not explicitly stated what standard of review should be applied to unpreserved claims of appearance of bias.[26]  However, the choice is irrelevant here because we would reach the same conclusion under any standard.

We conclude that Judy has not shown bias or appearance of bias. The court was not "harsh" with her. Rather the court advised the parties about the need for civility and politely admonished Judy several times when she addressed Walid instead of the

---

[23]    *Cf. Mitchell v. Mitchell*, 370 P.3d 1070, 1073, 1081-84 (Alaska 2016) (concluding that superior court erred in failing to address mother's voluntary unemployment argument where father had retired at age 47 and mother clearly raised the argument in the superior court).

[24]    *Pederson v. Arctic Slope Reg'l Corp.*, 421 P.3d 58, 65 (Alaska 2018) (quoting *Heber v. Heber*, 330 P.3d 926, 934 (Alaska 2014)).

[25]    *See Phillips v. State*, 271 P.3d 457, 469 (Alaska App. 2012) (discussing distinction between bias and appearance of bias).

[26]    *See, e.g.*, *Greenway v. Heathcott*, 294 P.3d 1056, 1062-63 (Alaska 2013).

court, interrupted Walid, or spoke with a raised voice. The court's conduct would not "create in reasonable minds a *perception* that the judge's ability to carry out judicial responsibilities with integrity, impartiality[,] and competence [was] impaired."[27] Furthermore Judy has not pointed to any evidence suggesting that the superior court formed an opinion from an extrajudicial source,[28] nor to any intrajudicial conduct or circumstances "so prejudicial that further participation [by the court was] unfair."[29] In the absence of such evidence, the court's purported failure to sanction Walid for discovery abuse does not show that the court was biased.[30]

### E.    Judy's Other Arguments Lack Merit.

Judy argues that the superior court did not understand her "stance." The record shows, however, that the court grasped Judy's argument that Walid was lying about his nonownership of Wally Trucking. Judy also argues that the superior court "err[ed] in not finding the statu[t]es of fraud, or misrepresentation." It is unclear what

---

[27]    *Ogden v. Ogden*, 39 P.3d 513, 516 (Alaska 2001) (first alteration and emphasis in original) (analyzing appearance of bias claim).

[28]    *Hooks v. Alaska USA Fed. Credit Union*, 413 P.3d 1192, 1197 (Alaska 2018) ("[L]itigants alleging bias must prove 'the judge formed an opinion . . . from extrajudicial sources, resulting in an opinion other than on the merits.' " (quoting *Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011))). *But see Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part) ("Although Alaska opinions are replete with statements that litigants must show an extrajudicial source of bias . . . that is not completely accurate. There is a line of authority requiring recusal when a judicial officer hears, learns, or does something intrajudicially so prejudicial that further participation would be unfair.").

[29]    *Brown*, 414 P.3d at 661 n.3.

[30]    *See Hooks*, 413 P.3d at 1197 ("Litigants cannot rely solely on 'adverse rulings' as evidence of bias." (quoting *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015))).

Judy means.  To the extent she is challenging the superior court's credibility determination, we have already rejected this argument.[31]  Lastly, in her reply brief, Judy raises concerns about actions of the Child Support Services Division.  Again we are not able to discern Judy's argument; in any case, we do not generally address arguments raised for the first time in a reply brief.[32]

## IV.   CONCLUSION

We AFFIRM the judgment of the superior court.

---

[31]      *See supra* Part III.A.  To the extent Judy seeks to challenge one of the earlier child support orders, her challenge is not properly before us.  *See supra* note 1.

[32]      *See Barnett v. Barnett*, 238 P.3d 594, 603 (Alaska 2010) ("[W]e deem waived any arguments raised for the first time in a reply brief . . . .").